(721 P.2d 294)
No. 57,939

JANICE D. YODER, *Appellee,* v. DANNY D. YODER, *Appellant.*

Opinion filed June 26, 1986.

*Mark Mellor, Phillip Mellor,* and *Arden P. Miller,* of Wichita, for appellant.

*Jerry Muth,* of Jerry Muth, Chartered, of Wichita, for appellee.

Before MEYER, P.J., DAVIS, J., and C. FRED LORENTZ, District Judge, assigned.

MEYER, J.: This is an appeal from the trial court's decision holding Danny D. Yoder, appellant, in indirect contempt of court on the basis of his interference with parental custody and his failure to pay child support. On appeal appellant disputes whether indirect contempt is a proper remedy in this action and in addition questions whether his ex-wife, Janice D. Yoder, appellee, is a proper party plaintiff. According to the record, the Secretary of Social and Rehabilitation Services (S.R.S.) was also a party.

On February 28, 1973, Danny and Janice Yoder were divorced in Sedgwick County, Kansas. Appellee was awarded sole custody of the parties' three minor children and appellant was awarded visitation and ordered to pay $200.00 per month child support.

In August 1984, the parties' minor child, Lori Yoder, then age fourteen, became pregnant by Michael Johnson, then age seventeen. When informed of Lori's pregnancy and of her desire to marry Michael Johnson, appellee refused Lori further contact with her boyfriend and requested Lori seek an abortion.

A few days prior to September 20, 1984, Lori Yoder disappeared from appellee's care. Unbeknownst to appellee, Lori and Michael Johnson had driven to Miami, Oklahoma, to be married. When the minor children discovered parental consent was required before they could be married in Oklahoma, Michael

Johnson phoned his father in Eureka, Kansas, who in turn phoned appellant.

Without contacting appellee, appellant drove to Miami, Oklahoma, where he and the father of Michael Johnson each gave written consent for their minor children to be married. On September 20, 1984, Lori Yoder and Michael Johnson were married in Miami, Oklahoma.

On October 1, 1984, appellee filed an affidavit and accusation in contempt against appellant alleging that appellant, by virtue of his giving consent to their minor child Lori's marriage, had interfered with her sole parental custody of the child. Appellee further sought to have appellant found in contempt for failure to pay child support since the divorce of the parties in 1973.

Defendant countered by stating that the award of sole custody of a child to one parent does not sever the right of the noncustodial parent to consent to the marriage of any of the parents' minor children. Appellant also stated that appellee was not the proper party to bring a contempt proceeding against him because appellee, in order to receive aid to dependent children, had assigned any and all accrued, present or future right to support to the Secretary of S.R.S.

The district court found appellant in indirect contempt on both issues. Regarding interference with parental custody, the court concluded that appellant had abandoned his family and thus had forfeited his right to make decisions affecting his minor children independent of appellee, the custodial parent. The appellant was thereafter sentenced to confinement in the Sedgwick County jail for a period of six months, or until such time as appellant purged himself of that contempt. Appellant was advised he could so purge himself by taking whatever legal steps were necessary to withdraw his consent to his daughter's marriage, or by proceeding to have her marriage annulled.

Regarding contempt for nonpayment of child support, the court found that appellee's assignment of her child support payments to the S.R.S. did not bar her from being a proper party to prosecute proceedings for nonsupport. Appellant was sentenced to ninety days in the Sedgwick County jail, said sentence to run concurrently with that imposed for interference with parental custody. As with the prior decision, the court granted appellant the right to purge himself from this contempt citation by paying at any time the full amount of child support in arrears.

Appellant first contends that the trial court erred in holding him in indirect contempt for interfering with the custody order arising out of the 1973 divorce. Appellant argues the giving of his consent to his minor daughter's marriage was statutorily permissible and that he therefore cannot be held in indirect contempt. We believe the appellant is correct and therefore reverse the trial court's decision holding him in indirect contempt on those grounds.

Indirect contempt is a proper proceeding and remedy in any civil action in which "an order" of a court has been violated. K.S.A. 20-1204a. If appellant acted within the scope of his parental rights as determined by Kansas law, he cannot be held in indirect contempt because he cannot be said to have violated any order.

In the present case, appellant acted within his parental rights in giving his consent to his minor daughter's marriage. Under Kansas law, a person under the age of 18 years must obtain the consent of his or her "father or mother" before that person can marry. K.S.A. 23-106. Under Oklahoma law, the law which governs the validity of the marriage involved herein, a similar statutory provision requires a female who is under the age of 16 years and pregnant to have the consent of "a parent" before getting married. Okla. Stat. Annot. tit. 43 § 3 (West 1979).

There are no specific Kansas cases on this point. However, we believe that the appellant acted well within his parental rights in consenting to his minor daughter's marriage. The Kansas legislature has clearly stated its policy by allowing either a "father" or a "mother" to consent to a minor's marriage. K.S.A. 23-106. The statute does not distinguish between custodial and noncustodial parents. The statute does not require that the consenting parent be a joint or sole custodian of the child. Had the legislature wished to do so, it could easily have made such a distinction. Rather, it is clear the consenting parent may merely be a "father" or a "mother." There is no dispute that the appellant is the father of his minor child. Therefore, we conclude the appellant exercised his statutorily permitted parental rights in consenting to his daughter's marriage.

We believe this is especially true under the facts of this case. While the child was living with her mother, she became pregnant by her boyfriend. Appellee wanted her daughter to have an

abortion and she refused to do so. The child left home and contacted the only person who could help her get married, her father. Appellant never approached his daughter to entice her away; she came to him. Appellant did not actively seek to violate the custody order. Rather, he acted passively in merely giving his consent to his daughter's marriage, which he was statutorily permitted to do. For this the appellant cannot be held in indirect contempt.

Appellee contends, however, that the appellant's consent violated the prior court order vesting appellee with sole custody of their daughter. Appellee's argument is without merit. An order of sole custody does not deprive the noncustodial parent of all his or her parental rights. Rather, it is clear that a noncustodial parent retains the right of visitation, K.S.A. 1985 Supp. 60-1610(a)(4)(B); the right to inherit from the child, K.S.A. 59-507; the right to grant consent to an adoption, K.S.A. 1985 Supp. 59-2102; and, as we hold now, the right to consent to a minor child's marriage, K.S.A. 23-106.

The appellant's parental rights were never severed by appropriate action. Therefore, the appellant retained the right to consent to his daughter's marriage and therefore did not violate any order of the court. Because no order was violated, appellant cannot be held in indirect contempt. K.S.A. 20-1204a.

At oral argument, appellee urges us to conclude that a father who is merely a "biological" father and who has had little contact with his child has absolutely no parental rights with respect to his child. We strongly disagree with appellee's position and refuse to hold that a mere "biological" father has no parental rights with respect to his children. A parent's right to the custody, care, and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment of the Constitution of the United States. *In re Stremel*, 233 Kan. 136, 142, 660 P.2d 952 (1983); *Sheppard v. Sheppard*, 230 Kan. 146, 152, 630 P.2d 1121 (1981). Although a noncustodial parent's rights are modified by a divorce and custody decree, he or she still retains certain rights that cannot be disturbed except upon a finding of unfitness. Among those rights is the right to consent to the marriage of a minor child.

Appellant also argues that the trial court erred by ordering that appellant could purge himself of indirect contempt (caused by

his alleged interference with the appellee's parental rights) by taking whatever legal steps are necessary to withdraw his consent to his daughter's marriage or by proceeding to have her marriage annulled.

Because we have ruled the trial court erred in finding appellant in contempt on that issue, any discussion of the penalty therefor is moot.

Appellant further contends that appellee is not a proper party plaintiff to bring an action for contempt against him for failure to make monthly support payments because appellee's assignment of the support payments to the S.R.S. is not only an assignment of her right to receive those payments, but also is an assignment of her right to enforce those payments.

The issue of whether a custodial parent who has assigned her rights to child support to the S.R.S. in exchange for aid from federal funds may commence a contempt proceeding against the noncustodial parent for failure to pay child support has not been specifically addressed by Kansas case law. A close reading of the pertinent statutes involved, however, reveals that the assignment of the right to receive child support payments does *not* preclude the assignor (the custodial parent) from commencing an action to enforce any support obligations which may exist.

K.S.A. 1985 Supp. 39-754(f) provides that "[i]f the secretary of social and rehabilitation services or the secretary's designee has on file with the court ordering support payments, a notice of assignment of support rights . . . the secretary shall be considered a *necessary party* in interest concerning any legal action to enforce, modify, settle, satisfy, or discharge an assigned support obligation." (Emphasis added.) This legislative language, because it refers to the S.R.S. as a "necessary party" in an action to enforce child support obligations, by negative inference implies that the S.R.S. is not the sole party capable of commencing such an action.

Although the S.R.S. is legislatively authorized to commence an enforcement of support action on its own (K.S.A. 1985 Supp. 39-755), the language in K.S.A. 1985 Supp. 39-754(f) making the S.R.S. a "necessary party" in such actions would be superfluous were it not true that another existed as a proper party plaintiff. And by the very nature of the proceedings, that other proper party plaintiff must necessarily be the custodial parent, the

assignor. Ergo, Kansas statutes indirectly and by negative inference provide authority for the proposition that a custodial parent who assigns her right to support to the S.R.S. in exchange for assistance from federal funds may still commence an action for enforcement of support, the only qualification being that the S.R.S. be joined in the action as a necessary party. See, *e.g.*, *Grassi v. Grassi*, 8 Kan. App. 2d 610, 611-12, 663 P.2d 312 (1983). As previously noted, the S.R.S. appeared. There is no merit to appellant's claim of error as to this issue.

In his docketing statement filed with this court, appellant raised the issue of whether the trial court erred in holding the appellant could purge himself of the contempt only by paying the total lump sum of accrued child support. However, neither appellant or appellee has briefed this issue. Therefore, we consider the issue abandoned and will not address it. *Steele v. Harrison*, 220 Kan. 422, 429, 552 P.2d 957 (1976).

For the above reasons, the trial court's decision holding appellant in contempt for failing to pay child support is affirmed. The trial court's decision holding appellant in contempt for consenting to his minor daughter's marriage is reversed.