826 A.2d 710

WALTER SACHAROW, PLAINTIFF–RESPONDENT, v. CYNTHIA SACHAROW, DEFENDANT–APPELLANT.

Argued November 18, 2002—Decided July 16, 2003.

64

*Lawrence S. Lustberg* argued the cause for appellant (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione,* attorneys New Jersey Coalition for Battered Women and *Douglas F. Ortelere,* attorney Cynthia Sacharow, attorneys; *Mr. Lustberg, Risa E. Kaufman* and *Jennifer Ching,* on the briefs).

*Walter Sacharow* argued the cause pro se (*Archer & Greiner,* attorneys; *Mr. Sacharow, Lee M. Hymerling, Leif M. Nissen, Patrick Judge, Jr.,* and *Peter J. Banfe, Jr.,* on the briefs).

*Nancy Goldhill* argued the cause for *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* President, attorney).

*Douglas K. Wolfson,* Assistant Attorney General, argued the cause for *amicus curiae* Division on Women, Department of Community Affairs (*David Samson,* Attorney General of New Jersey, attorney; *Mr. Wolfson* and *Nancy Kaplen,* Assistant Attorney General, of counsel; *Mr. Wolfson, Daniel P. Reynolds,* Senior Deputy Attorney General, *Melissa J. Resnick* and *Doreen J. Piligian,* Deputy Attorneys General, on the briefs).

The opinion of the Court was delivered by

LONG, J.

In 1997, in response to the problem of domestic abuse occurring nationwide, our Legislature enacted the Address Confidentiality Program Act (Act or Statute), *N.J.S.A.* 47:4–1 to *N.J.S.A.* 47:4–6, a measure that protects abuse victims by shielding their locations from their abusers. This appeal presents the narrow issue of whether the action of the Address Confidentiality Program (ACP) binds a court in a subsequent proceeding involving custody and visitation. We hold that when address confidentiality is raised in a judicial proceeding involving custody and visitation, the question of confidentiality must be decided on its merits, regardless of a party's ACP status, based on the child's best interests. A tangential question that is posed is whether an applicant for address confidentiality either in the ACP or in court is required to have obtained a domestic violence restraining order as a condition of confidentiality. We hold that a domestic violence restraining order is not a prerequisite of address confidentiality in any forum.

I.

Cynthia and Walter Sacharow were married on March 12, 1994, and have one son who is seven years old. On March 14, 2000, Mr. Sacharow filed for divorce. On June 1, 2000, Mr. Sacharow moved for sanctions against his wife, claiming that she was interfering with the visitation schedule they had agreed on when they separated. Pursuant to a court order dated June 23, 2000, Mr. Sacharow was awarded visitation for two afternoons a week, all day on Saturdays, and Thursday overnight. The order also forbade both parties from following or harassing each other and granted Mr. Sacharow telephone access to his son.

At some point during the summer of 2000, Mrs. Sacharow lost her apartment. She and her son thereafter lived with friends or in women's shelters. During that time, she refused to give Mr. Sacharow their address or phone number, although she did have a pager and Mr. Sacharow could also call the daycare center where their son spent every weekday. In the time leading up to the

settlement of their divorce, Mrs. Sacharow twice was held in contempt for violating the visitation schedule and for failing to allow Mr. Sacharow regular phone contact with his son.

While the divorce action was pending, on November 2, 2000, Mrs. Sacharow filed a complaint pursuant to the Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25–17 to *N.J.S.A.* 2C:25–33, accusing Mr. Sacharow of domestic violence. A temporary restraining order was entered against Mr. Sacharow on November 8, 2000, pending a final hearing on Mrs. Sacharow's complaint.

At the final hearing on November 29, 2000, the court summarized the substance of the allegations as follows:

> The allegations at that time, let me see if I have it right, first two months repeatedly paged you four times a day despite your protests, came to your home and uninvited, refused to leave even when police were called, repeatedly files false police reports against defendant.

Mrs. Sacharow added that she suspected that Mr. Sacharow had called the Division of Youth and Family Services (DYFS) to find out her whereabouts after she had been evicted from a former apartment. She stated "I am assuming that he was upset with the fact that he didn't know where I am with his son every moment of the day and he went and called DYFS and told them I was sleeping in my car." The court questioned whether Mr. Sacharow had ever struck Mrs. Sacharow, to which she responded "no, but he did grab me at one point." Mrs. Sacharow also alleged "he's stalking me indirectly. His mother watched every move I made when I lived in Clifton."

Mr. Sacharow's attorney argued before the court that the alleged harassment—the frequent paging of Mrs. Sacharow by Mr. Sacharow—was in fact his attempt to secure his visitation rights with their son. Because Mrs. Sacharow was homeless and had no phone service, Mr. Sacharow had no alternative but to try to reach her by pager. The court concurred:

> [W]hat is becoming readily apparent to me is that this is a result of a matrimonial action. This is a result of problems of a relationship that has failed. You're involved in another aspect of this case. I do not see a permanent domestic violence

violation here. . . . What I see is an outgrowth of a matrimonial matter. I understand it is proceeding in matrimonial and I am dismissing this complaint.

The court dismissed the domestic violence complaint and directed Mrs. Sacharow to address the matter in the matrimonial action.

Three months later, on February 27, 2001, Mrs. Sacharow submitted an application to the ACP, including a sworn statement that she had reason to believe that she was the victim of domestic abuse and that she was at risk of further abuse. She was accepted into the program on March 9, 2001, as a result of which her address and that of her son, as well as the address of her son's school were no longer public records.

On January 2, 2002, the parties entered into a settlement agreement regarding their divorce. As part of the settlement, the parties agreed to joint legal custody of the child. Mrs. Sacharow was awarded sole residential custody "on condition that she demonstrates that she is committed to maintaining regular contact between the father and the son by honoring a liberal parenting time schedule." Obviously there is no issue of parental unfitness in this case.

The settlement agreement reserved for the court the issue of whether Mrs. Sacharow would have to divulge her address to Mr. Sacharow. The court concluded that Mrs. Sacharow had no compelling reason to interfere with Mr. Sacharow's "right" as a custodial parent to know the whereabouts of his son, as she had failed to carry her burden of proof with respect to a final restraining order:

> I understand that there was a domestic violence action at one time but it was either dismissed or dropped, but my point is a final restraining order was not entered. . . . Miss Sacharow, under the law I have to compel you to give him your address and it has nothing to do with you. It has to do with young Walter. He has the right to know where his son is living. He has that right. If you guys didn't have kids, I wouldn't care where you lived and I wouldn't tell you to tell him, it's really none of his business. . . . If he abuses that [right], if he harasses you or does anything, you have the domestic violence laws to protect you.

Regarding her ACP status, the court stated

> You're not a victim of domestic violence unless you have a final restraining order in which a judge has made finding of fact and a conclusion of law that Mr. Sacharow

> committed an act of domestic violence against you. Then you're a victim of domestic violence and then, perhaps, in some cases the judge who hears that final restraining order can order your address withheld. That's not the facts here.

Accordingly, the court entered an Order compelling Mrs. Sacharow to release her residential information to Mr. Sacharow within 48 hours and denied her oral petition for a stay.

Mrs. Sacharow filed an Emergent Motion for a stay pending appeal to the Appellate Division. That court denied the motion and *sua sponte* dismissed the appeal on its merits. We granted certification, *Sacharow v. Sacharow*, 172 *N.J.* 181, 796 *A.*2d 897 (2002). We also granted *amicus* status to the Division on Women and to Legal Services of New Jersey.[1]

## II.

Mrs. Sacharow makes several arguments in service of her overall contention that the trial court improperly ordered her to release her address to Mr. Sacharow. Her primary assertion is that the court was bound by the action of the ACP. She also disputes the notion that Mr. Sacharow has any "right" to know where his son lives. According to her, even if Mr. Sacharow does have such a right, it is outweighed by the State's interest in protecting the safety of domestic abuse victims.

Mr. Sacharow does not challenge the ACP per se but argues that it is not binding on the court. If it is interpreted to be binding, Mr. Sacharow says that it violates his due process rights and his right to parent. Furthermore, he contends that to the extent that the prior domestic violence proceeding ended in dismissal, both the Family Part and the Division on Women should have considered themselves bound.

---

[1] When Mr. Sacharow appeared for oral argument on November 18, 2002, he was unrepresented. The Court heard the parties' arguments but appointed counsel to submit supplemental briefing on Mr. Sacharow's behalf. Mr. Sacharow's appointed counsel thereafter filed briefs on his behalf.

The focus of the *amici* is that the trial court was wrong to order Mrs. Sacharow to release her address solely because she did not have a final restraining order against Mr. Sacharow. How we interpret the ACP and its interrelationship with judicial action will determine which, if any, of the foregoing issues will require disposition.

## III.

Since 1991, nine states have enacted address confidentiality programs to protect victims of domestic violence from being tracked down by their abusers. By and large, the programs are designed to be as accessible to victims as possible. Only the Rhode Island and Indiana statutes expressly require that a candidate possess a restraining order. *Ind.Code* §§ 5–26.5–2–2 (2003); *R.I. Gen. Laws* § 17–28–2 (2003). The other statutes have extremely lenient program entry requirements and do not require the applicant to file a complaint with either the police or a court. *Cal. Gov't Code* § 6206 (2003) (providing open-ended list of possible documentation in support of claim of domestic violence for purposes of address confidentiality program, including, but not requiring, police and court files); *Fla. Stat.* ch. 741.402 (2003) (defining "domestic violence" for purposes of address confidentiality program to include acts "regardless of whether [they] have been reported to law enforcement officer."); *Mass. Gen.Stat. Ann.* ch. 9A § 2 (2003) (requiring completed application to designate secretary of state as recipient for correspondence, to specify actual address where mail is to be forwarded, and to contain attestation by applicant that disclosure of applicant's address threatens applicant's safety); *N.H.Rev.Stat. Ann.* § 7.41 (2003) (defining "domestic violence" for purposes of address confidentiality program to include acts "regardless of whether [they] have been reported to law enforcement officer."); *Vt. Stat. Ann.* 15 § 1151 (2003) (same); *Wash. Rev.Code* §§ 40.24.020–40.24.030 (2003) (same).

In 1997, the New Jersey Legislature enacted the Address Confidentiality Program Act in order "to assist persons who are victims of domestic violence in establishing and maintaining a confidential address to prevent their assailant from finding them." Assembly Appropriations Committee Statement, *L.* 1997, c. 369. The Statement explained that

> a common experience of battered women is that for years after they end an abusive relationship they must avoid their abusers or be in danger. Abusers are so persistent that in some cases it has been dangerous for women to make their addresses public for even the most important reasons.
>
> [Assembly Appropriations Committee Statement, *L.* 1997, c. 369.]

The Program is not advertised publicly, and candidates generally are drawn from domestic violence programs, the county prosecutor's office, Legal Services, or welfare services. All of those organizations offer counseling services to assist in the design of "safety plans" that might include enrollment in the Program.

The principal provisions of the Act are as follows.

a. There is created in the department a program to be known as the "Address Confidentiality Program." A person 18 years of age or over, a parent or guardian acting on behalf of a minor, or a guardian acting on behalf of an incapacitated person may apply to the secretary to have an address designated by the secretary as the applicant's address. The secretary shall approve an application if it is filed in the manner and on the form prescribed by the secretary and if it contains:

(1) a sworn statement by the applicant that the applicant has good reason to believe:

(a) that the applicant is a victim of domestic violence as defined in this act; and

(b) that the applicant fears further violent acts from the applicant's assailant;

(2) a designation of the secretary as agent for the purpose of receiving process and for the purpose of receipt of mail;

(3) the mailing address where the applicant can be contacted by the secretary, and a telephone number where the applicant can be called;

(4) the new address or addresses that the applicant requests not be disclosed because of the increased risk of domestic violence; and

(5) the signature of the applicant and any person who assisted in the preparation of the application, and the date.

b. An application shall be filed with the secretary.

c. Upon approving a completed application, the secretary shall certify the applicant as a program participant. An applicant shall be certified for four years

following the date of filing unless the certification is withdrawn or invalidated before that date.

d.   A program participant may apply to be recertified every four years thereafter.

e.   A program participant may use the address designated by the secretary as his or her work address.

f.   Upon receipt of first class mail addressed to a program participant, the secretary or a designee shall forward the mail to the actual address of the participant. The secretary may arrange to receive and forward other kinds and classes of mail for any program participant at the participant's expense.

g.   The secretary, in accordance with the provisions of the "Administrative Procedure Act," *P.L.* 1968, c. 410 (C.52:14B–1 *et seq.*), shall promulgate rules and regulations to effectuate the purposes of this act.

[*N.J.S.A.* 47:4–4.]

The Statute prescribes that domestic violence is "an act defined in [*N.J.S.A.* 2C:25–19], *if the act has been reported to a law enforcement agency or court." N.J.S.A.* 47:4–3.[2] The Candidate is not required to provide a final restraining order to be eligible. If an application is filed along with a certification that the applicant reported an incident of domestic violence to the police or a court, admission is assured. *N.J.S.A.* 47:4–4(a) ("The secretary *shall approve* an application if it is filed in the manner and on the form prescribed by the secretary and if it contains [the elements

---

[2] *N.J.S.A.* 2C:25–19(a) defines "domestic violence" as the following:

"Domestic violence" means the occurrence of one or more of the following acts inflicted upon a person protected under this act by an adult or an emancipated minor:

(1) Homicide, *N.J.S.* 2C:11–1 *et seq.;*

(2) Assault, *N.J.S.* 2C:12–1;

(3) Terroristic threats, *N.J.S.* 2C:12–3;

(4) Kidnapping, *N.J.S.* 2C:13–1;

(5) Criminal restraint, *N.J.S.* 2C:13–2;

(6) False imprisonment, *N.J.S.* 2C:13–3;

(7) Sexual assault, *N.J.S.* 2C:14–2;

(8) Criminal sexual contact, *N.J.S.* 2C:14–3;

(9) Lewdness, *N.J.S.* 2C:14–4;

(10) Criminal mischief, *N.J.S.* 2C:17–3;

(11) Burglary, *N.J.S.* 2C:18–2;

(12) Criminal trespass, *N.J.S.* 2C:18–3;

(13) Harassment, *N.J.S.* 2C:33–4;

(14) Stalking *P.L.* 1992, c. 209 (C. 2C:12–10).

[*N.J.S.A.* 2C:25–19(a).]

prescribed by *N.J.S.A.* 47:4–4(a)(1) to (5) ].") (emphasis added). Enrollment automatically binds all other agencies, except in very narrow circumstances:

> A program participant may request that any State or local agency use the address designated by the secretary as the program participant's address. The agency shall accept the address designated by the secretary as a program participant's address, unless the agency has demonstrated to the satisfaction of the secretary that:
>
> (1) the agency has a bona fide statutory basis for requiring the program participant to disclose to it the actual location of the program participant; and
>
> (2) the disclosed confidential address of the program participant will be used only for that statutory purpose and will not be disclosed or made available in any way to any other person or agency.
>
> [<em>N.J.S.A.</em> 47:4–6.]

The regulations provide that a participant's minor children will also be enrolled in the ACP. *N.J.A.C.* 5:61–2.1 (referring to minor child as "program participant"). The program manager may release the participant's address for law enforcement purposes if "she or he determines that an emergency situation exists and that the safety or health of a program participant is imperiled by withholding this information." *N.J.A.C.* 5:61–9.3.

Participation in the ACP will be cancelled only if:

> (1) the program participant obtains a name change through an order of the court;
>
> (2) the program participant changes the participant's residential address and does not provide seven days' advance notice to the secretary;
>
> (3) mail forwarded by the secretary to the address or addresses provided by the program participant is returned as undeliverable; or
>
> (4) any information on the application is false.
>
> [<em>N.J.S.A.</em> 47:4–5.]

That statute is the backdrop for our inquiry.

IV.

■ We turn first to Mrs. Sacharow's argument that the Superior Court is bound by the Statute to honor her ACP status. We disagree for several reasons.

*N.J.S.A.* 47:4–6 provides:

> A program participant may request that any State or local *agency* use the address designated by the secretary as the program participant's address. The *agency*

shall accept the address designated by the secretary as a program participant's address....

[<i>N.J.S.A.</i> 47:4–6 (emphasis added).]

According to Mrs. Sacharow, "agency" should be read broadly to include courts, thus stripping judges of the authority to rule on the issue of address confidentiality once a participant has enrolled in the ACP.

The very regulations of the ACP belie that notion. *N.J.A.C.* 5:61–2.1 provides that "agency means an office, department, division, bureau, board, commission, or other *statutory unit of State or local government* or any functional subdivision of that agency." *N.J.A.C.* 5:61–2.1 (2002) (emphasis added). That definition, in turn, springs from the Administrative Procedure Act (*N.J.S.A.* 52:14B–1 *et seq.*) wherein an agency is limited to executive branch entities:

"State agency" or "agency" shall include each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of the Governor.

[<i>N.J.S.A.</i> 52:14B–2(a).]

Plainly a court is not an "agency" within the meaning of those enactments. The judiciary is not only a separate branch of government from the executive, it is also a constitutional, not a statutory creature. *N.J. Const.* art. VI, § 1, para. 1 ("The judicial power shall be vested in a Supreme Court, a Superior Court, and other courts of limited jurisdiction."); *N.J. Const.* art. VI, § 3, para. 1 ("The Superior Court shall consist of such number of judges as may be authorized by law, but not less than twenty-four, each of whom shall exercise the powers of the court subject to rules of the Supreme Court."). Accordingly, by its very terms, the ACP statute was not intended to bind the judiciary.

There is, in addition, a more compelling reason why the statute cannot bind a court. The doctrine of collateral estoppel,

which is at the heart of Mrs. Sacharow's argument, is " 'that branch of the broader law of *res judicata* which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.' " *Woodrick v. Jack J. Burke Real Estate, Inc.,* 306 *N.J.Super.* 61, 79, 703 *A.*2d 306 (1997) (quoting *State v. Gonzalez,* 75 *N.J.* 181, 186, 380 *A.*2d 1128 (1977)) *certif. granted, Woodrick v. Fox & Lazo, Inc., Realtors,* 153 *N.J.* 214, 708 *A.*2d 65, *and app. dismissed,* 157 *N.J.* 537, 724 *A.*2d 799 (1998). More particularly, in *Matter of the Estate of Dawson,* 136 *N.J.* 1, 20–21, 641 *A.*2d 1026 (1994), we said the following:

For the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[*Id.* at 20–21, 641 *A.*2d 1026 (citations omitted).]

Mrs. Sacharow's admission into the ACP fails to satisfy any of those standards. To be accepted in the program, the applicant essentially has only to apply—submitting her own certification that she has "good reason" to believe that she is a victim of domestic violence and fears future violent acts from her assailant, *N.J.S.A.* 47:4-4(a)(1), and a certification "by an application assistant that [the applicant] has reported an act of domestic violence to a law enforcement agency or court." *N.J.A.C.* 5.61–3.1(b)(1). No finding that domestic violence has indeed occurred is required of a court or the agency, and no independent verification of the applicant's claims is undertaken. As a representative of the Division on Women certified, the applicant "consults" with a counselor/application assistant who "helps" with the completion of the application. If they both agree that the ACP will "benefit" the applicant, the Program Manager and/or Program Assistant will "discuss" the matter with the applicant. The main focus of that discussion, according to the Division, is whether the applicant is willing to bear the burden of moving to an undisclosed location

with the lifestyle and familial interruption that that entails. Thereafter, if the parties agree, the application is filed with the Division on Women. According to the Statute, so long as the application conforms to its requirements, it "shall" be approved. *N.J.S.A.* 47:4–4(a). No notice or opportunity to be heard is granted the accused abuser and no adjudication occurs.

As is evident from the foregoing, the issue of domestic violence was not "litigated" in the ACP: Mr. Sacharow had no opportunity to defend; no determination "on the merits" occurred; and Mr. Sacharow was neither a party nor in privity with a party in the ACP action. *Dawson, supra,* 136 *N.J.* at 20–21, 641 *A.2d* 1026. "[I]t remains essential that the party to be bound by the former adjudication have fair notice and be fairly represented in the prior proceeding . . . ." *Parks v. Colonial Penn Ins. Co.,* 98 *N.J.* 42, 47, 484 *A.2d* 4 (1984). Preclusion can occur only "[w]hen an issue of fact or law is actually litigated and determined by valid and final judgment." *Hernandez v. Region Nine Housing Corp.,* 146 *N.J.* 645, 659, 684 *A.2d* 1385 (1996) (citing *Restatement (Second) of Judgments* § 27 at 250 (1982)) (emphasis omitted); *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland,* 26 *N.J.* 307, 314, 139 *A.2d* 741 (1958) (" '[I]t is only upon such matters as were actually litigated and determined that the judgment is conclusive.' ") (quoting *City of Paterson v. Baker,* 51 *N.J. Eq.* 49, 53, 26 *A.* 324 (Ch. 1893)).

We recognize that "[t]he determinations made by administrative agencies are entitled to preclusive effect 'if rendered in proceedings which merit such deference.' " *Hernandez, supra,* 146 *N.J.* at 660, 684 *A.2d* 1385 (quoting *Ensslin v. Township of North Bergen,* 275 *N.J.Super.* 352, 369, 646 *A.2d* 452 (App.Div.1994), *certif. denied,* 142 *N.J.* 446, 663 *A.2d* 1354 (1995)). The Act, however, provides none of the hallmarks of a quasi-judicial adjudication—notice, hearing, and the exercise of judgment on the merits—and therefore does not warrant deference in a subsequent judicial action. Thus the Family Part, which has exclusive jurisdiction over the custody and visitation of children, correctly held

that it was not bound by the admission of Mrs. Sacharow into the ACP.

## V.

That is not the end of the inquiry. In denying Mrs. Sacharow the right to keep her address and the address of her child a secret from Mr. Sacharow, the court enunciated two reasons: that Mrs. Sacharow did not have a final domestic violence restraining order and that Mr. Sacharow had a "right" to know where his son is living. We will address those reasons serially.

## A.

Plainly, the Act does not require that the applicant possess a final domestic violence restraining order to qualify for protection. That is critical to its operation. Indeed, the social science research and literature detail the many reasons why a legitimate domestic violence complaint may be withdrawn or not even filed in the first place. Among those reasons are Battered Woman's Syndrome, the victim's subjugation and isolation from outside help, lack of financial resources, and, above all, the real threat of violent retaliation. Jill Lebowitz, *Giovine v. Giovine,* Pursuit of Tort Claims for Domestic Violence in New Jersey and the Creation of a New Tort Cause of Action for "Battered Women's Syndrome," 17 *Women's Rts. L. Rep.* 259, 269–70 (1996) (outlining Battered Woman's Syndrome and explaining psychological, financial and cultural reasons women do not bring complaints or drop them prior to hearings). That is why the Legislature deemed the certification of the applicant to be sufficient and why it specifically did not require a prior domestic violence order as a basis for ACP protection. *N.J.S.A.* 47:4–4(a).

We think the same reasoning is applicable when a litigant seeks address confidentiality in a judicial proceeding involving custody and visitation: the failure of a party to institute or to pursue a domestic violence proceeding to conclusion is of no

consequence. To be sure, the entry of a prior domestic violence restraining order adjudicating a claim may be given preclusive effect by a court, if warranted. *J.F. v. B.K.*, 308 *N.J.Super.* 387, 392, 706 *A.2d* 203 (App.Div.1998) (holding that plaintiff was precluded under principles of *res judicata* and collateral estoppel from relitigating, in proceedings under Prevention of Domestic Violence Act, allegations which had been decided adversely to her in earlier hearing). However, that is a far cry from the determination by the trial court that the mere absence of a domestic violence order barred Mrs. Sacharow from address confidentiality relief. That is simply incorrect.

## B.

The trial court's alternate reason for denying Mrs. Sacharow the protection of the ACP was Mr. Sacharow's "right" to know where his son lives. To be certain, both parents have a fundamental right to the care and custody of their children. *Troxel v. Granville*, 530 *U.S.* 57, 67, 120 *S.Ct.* 2054, 2060, 147 *L.Ed.2d* 49, 60 (2000) (stating that Due Process Clause of Fourteenth Amendment encompasses "fundamental right of parents to make decisions concerning the care, custody, and control of their own children."); *Watkins v. Nelson*, 163 *N.J.* 235, 245, 748 *A.2d* 558 (" '[T]he right of natural parents to the custody, care and nurturing of their children has risen to the stature of a fundamental right and deserves special protection.' ") (quoting *In re D.T.*, 200 *N.J.Super.* 171, 176, 491 *A.2d* 7 (App.Div.1985)). If the State or a third party seeks to interfere with that right, only the avoidance of harm to the child or "exceptional circumstances" will justify an intrusion. *Watkins, supra*, 163 *N.J.* at 237–38, 748 *A.2d* 558.

However, when, as here, *both* parents have a fundamental right to the care and nurturing of their children and neither has a preeminent right over the other, their contest stands on different footing. It is not a third party or the State that seeks to intrude into the protected sphere of family autonomy. Rather, by submit-

ting their dispute to the court, it is the parties themselves who essentially seek the impairment of each other's rights. In that circumstance, the State is thrust into the role of "mediator by necessity." *Carr v. Carr,* 44 *Mass.App.Ct.* 924, 691 *N.E.*2d 963, 965 (quoting *The Constitution and the Family,* 93 *Harv. L.Rev.* 1156, 1326 (1980)), *rev. denied,* 427 *Mass.* 1104, 695 *N.E.*2d 667 (1998), *cert. denied,* 525 *U.S.* 1073, 119 *S.Ct.* 807, 142 *L.Ed.*2d 667 (1999).

Indeed, by seeking a divorce and invoking the jurisdiction of the Family Part, each party assented to the possibility that there will be some curtailment of what would otherwise be the ordinary rights concomitant to parenthood. For example, a party may be denied custody. *N.J.S.A.* 9:2–4(b). Visitation may be circumscribed. *N.J.S.A.* 9:2–4(c). Vacations may be shared or lost. *Ibid.* One parent may be granted the right to move away with the child. *N.J.S.A.* 9:2–2. All such orders impair to some extent one of the parties' parental rights, and the party participants are deemed to have consented to the possibility of such impairment when they submit their disagreement to a court. The only limitation on the court is the application of correct legal principles to the facts, subject to the standards governing appellate review of judicial decisions.

In such cases, the sole benchmark is the best interests of the child. *Watkins, supra,* 163 *N.J.* at 253, 748 *A.*2d 558; *Wilke v. Culp,* 196 *N.J.Super.* 487, 497, 483 *A.*2d 420 (App.Div.1984) (*citing Fiore v. Fiore,* 49 *N.J.Super.* 219, 139 *A.*2d 414 (App.Div.1958)), *certif. denied,* 99 *N.J.* 243, 491 *A.*2d 728 (1985); *see also Asch v. Asch,* 164 *N.J.Super.* 499, 505, 397 *A.*2d 352 (App.Div.1978) ("It is axiomatic that the court should seek to advance the best interests of the child where her parents are unable to agree on the course to be followed."). Because the trial court in this case allowed the absence of a prior domestic violence restraining order to control, no best interests analysis occurred in connection with Mrs. Sacharow's address confidentiality application. We thus reverse and remand the case for a trial on that issue.

In terms of the procedure on the remand, Mrs. Sacharow bears the initial burden of going forward and the initial burden of proof. There are several reasons for that. Primary is that because the ACP is not binding on the court, she is the party seeking the relief of address confidentiality. Moreover, in terms of family law principles, this case involves an agreement for joint custody and visitation. It is a given under such a scheme that there is no issue of parental unfitness. Moreover, "[u]nder a joint custody arrangement legal custody—the legal authority and responsibility for making 'major' decisions regarding the child's welfare—is shared at all times by both parents." *Beck v. Beck*, 86 *N.J.* 480, 486–87, 432 *A.*2d 63 (1981). Implicit in that notion is the presumption that each parent has knowledge—at least of the child's living conditions and school situation—on which to base his or her parental judgments. A joint custodian, unaware of whether his or her child is living in danger or in squalor or is attending a sub-standard school, has been deprived of the wherewithal to exercise that paramount responsibility.

That presupposition also helps to direct the template for the remand. Mrs. Sacharow, who is seeking to keep her child's whereabouts from Mr. Sacharow, will bear the burden of proving the prior domestic abuse along with a realistic fear of recurrent abuse because those are the underpinnings of address confidentiality. *See N.J.S.A.* 47:4–4(a). That issue should be dealt with first with Mrs. Sacharow going forward and Mr. Sacharow responding if he so chooses.

If Mrs. Sacharow fails to prove those elements, the issue of address confidentiality will evaporate. If, on the other hand, she satisfies the trial court by a preponderance of the evidence that she has been the victim of domestic violence at Mr. Sacharow's hands and that she reasonably fears that it will reoccur, address confidentiality presumptively will serve both the mother and the child's welfare by avoiding occasions of violence. The burden thus will shift to Mr. Sacharow to produce evidence and prove that

address confidentiality would not be in the best interests of the child.

In assessing best interests in this context, the court should take into account the good faith of the parties; the prior history of dealings between them; the relationship between each parent and the child; any efforts by either party to alienate the child from the other parent; the effect that address confidentiality has or will have on those relationships and on the child; any special needs of the child; and any other matter that bears on the best interests of the child. *N.J.S.A.* 9:2–4(c) (enumerating specific statutory factors, including past history of domestic abuse, to be taken into account when deciding custody dispute between natural parents); *Fantony v. Fantony*, 21 *N.J.* 525, 536–37, 122 *A.*2d 593 (1956) ("[T]he paramount consideration is the safety, happiness, physical, mental and moral welfare of the child. Neither parent has a superior right to custody. . . . Each case is [to be] decided on its own facts and circumstances.").

On the remand, Mr. Sacharow may raise the issue of whether the findings made by the court in denying the final domestic violence restraining order should be binding. The court should apply the principles governing *res judicata* and collateral estoppel that we have outlined and determine whether, in fact, any relevant findings were made and if so, whether they should be given preclusive effect. If the court concludes that the domestic violence findings, such as they were, are binding, because almost three years have passed since they issued, what has occurred in the interim should be assessed as well.

## VI.

The ACP is a salutary program that the Legislature envisioned as an additional measure of protection for abuse victims. No prior domestic violence restraining order is needed for ACP protection. The program can be utilized as a stand-alone remedy or as a resource in a judicial proceeding where address confidentiality is warranted by the conduct of a domestic abuser. However, be-

cause the ACP does not involve notice, a hearing, or a merits determination, courts are not bound by ACP action. In every case the court is free to decide the issue of the need for address confidentiality based on the record before it and on any binding prior adjudications on the subject. Where child custody and visitation are at issue, the best interests of the child are the polestar of the inquiry.[3] Nothing in this opinion should be viewed as a commentary on the validity of the procedures of the ACP. Because we have not given the program binding effect in a subsequent judicial proceeding, that issue was not squarely presented.

## VII.

The judgment of the Appellate Division is reversed. The matter is remanded for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, LaVECCHIA, and ZAZZALI—5.

*Opposed*—None.

---

[3] We do not anticipate a challenge to address confidentiality generally or to ACP status in particular in cases that do not involve children. It is hard to imagine why a party without children would need to know his spouse or former spouse's address. To be sure, there might be residual financial entanglements between them, but those easily could be overseen by the Probation Department or another intermediary without the need for personal contact.