NOT DESIGNATED FOR PUBLICATION

No. 128,236

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Parentage of J.B. and N.B.

MEMORANDUM OPINION

Appeal from Johnson District Court; JOANN WOLTMAN, judge. Submitted without oral argument. Opinion filed July 25, 2025. Affirmed.

*T.D.B.*, appellant pro se natural father.

*R.L.Z.*, appellee pro se natural mother.

Before HILL, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: In a paternity action filed by R.L.Z. (Mother), T.D.B. (Father) appeals the district court's contempt order granting Mother sole legal custody of J.B. and N.B., adopting her proposed parenting plan, and awarding her child support. After a careful review of the record, we find no error by the district court, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2023, Mother, individually and as next friend of her two minor children, filed a petition for determination of parentage and custody of minor children. Father answered and acknowledged paternity. The district court entered a final order determining paternity on March 29, 2024.

During the litigation of child support and custody issues, Father filed numerous pleadings challenging the district court's jurisdiction to hear the case. Father repeatedly argued the best interests of the child standard violated his constitutional rights as a "fit parent" of the children. He alleged the district court did not have jurisdiction to determine child custody because the children were nonlitigants and the district court did not have jurisdiction to determine the interests of nonlitigants. He also contended depriving the children of "a full and equal fit father . . . as a penalty for the marital choices of their parents" was unconstitutional. He asserted the State must appear and demonstrate a compelling justification for the Kansas Parentage Act, K.S.A. 23-2201 et seq.

In April 2024, Father filed a motion to change judge under K.S.A. 20-311d. In May 2024, Father filed an affidavit alleging the district court was biased because "my judge and every judge in Kansas knows for absolute certain that the Kansas family law code is facially unconstitutional under any standard" and that the district court knew it had no judicial subject matter jurisdiction but refused to "entertain any litigation that might deprive them of the illegal power they exercise every day." On June 28, 2024, the district court denied Father's motion for change of judge.

On May 1, 2024, Mother filed a motion to enforce discovery, which was heard on May 17, 2024, because Father refused to cooperate with discovery. At the conclusion of the hearing, the district court set the pretrial conference for July 10, 2024, and asked the parties to prepare a joint pretrial order before the pretrial conference.

On May 21, 2024, the district court entered an order granting Mother's motion to enforce discovery and ordering Father to provide the requested information by May 31, 2024, "or face further sanctions from the Court as laid forth in K.S.A. § 60-237(b)."

On June 18, 2024, Mother filed an accusation of contempt and motion for order to appear to show cause. In her supporting affidavit, Mother alleged Father had "fully and

2

completely failed to comply" with the district court's discovery orders. She requested Father be ordered to immediately comply with the orders and pay attorney fees related to the contempt action. Finally, should Father not comply, Mother requested that the district court further sanction Father by "including an attachment order or entry of default judgment, upon verification of non-compliance by petitioner."

The district court ordered Father to appear on July 10, 2024, "to show cause why he should not be held in contempt and determined to be in contempt of this court and punished as the court shall direct." The Johnson County Sheriff's Office personally served Father the motion, affidavit, and order to appear. In addition, on July 8, 2024, the district court issued a written order, requiring each party to file a domestic relations affidavit and proposed parenting plan before the pretrial conference and bring courtesy copies to the pretrial conference.

On July 10, 2024, the parties appeared for the contempt hearing and pretrial conference. Because Father brought the children into the courtroom, the district court asked Mother to take the children and sit in the hall. Father stated that although he had filed a motion for continuance, he had not filed either a proposed parenting plan or a domestic relations affidavit.

The district court found that Father was "wholly unprepared for the pretrial conference." Father reiterated his request for a continuance, which the district court denied.

The district court noted that Mother's parenting plan requested sole legal custody and asked Mother's counsel to explain. Counsel explained that there was "basically unilateral decision-making, meaning if dad agrees with her, then it works. If dad doesn't agree, then it is his way." Counsel advised the court of the "high level of disagreement" between the two parents.

The district court also questioned Mother's counsel about Mother's motion for indirect civil contempt. Counsel explained that Father had not produced any of the requested documents. Counsel asked the court to "bring the case to some sort of conclusion," and requested consideration of the proposed "default remedy and the remedy of not permitting presentation, [or] cross-examination on certain topics" as sanctions.

During the hearing, Father questioned the district court's jurisdiction, asking the district court's position on standing. The district court stated it would not answer his questions but would listen to his argument. Father continued to question the district court, asking whether the children have constitutional rights in the case. He questioned the statutory authority of the discovery requests. When Mother's counsel attempted to explain the legal process to Father, Father interrupted twice. The district court told Father that if he interrupted again, he would be held in direct contempt. Father asked if he was able to speak, and the district court replied, "Sir—no, you may not."

The district court asked Father whether he intended to provide the information ordered by the court. Father replied that he needed to "seek counsel and do my research." He asked that the discovery order be amended to state where its "authority comes from." The district court advised it would not amend its order, and Father responded, "It's an advisory order."

The district court stated, "I am taking your response as you're not going to provide the information. You understand that if you do not abide by these court's orders, that I can enter a judgment for child support, legal custody, residency, and parenting time." Father replied, "That is fine. I don't have an income. I don't know why that is relevant in this case. There is no standing." The court noted that Father had "refused every order this court has put in place."

4

The district court found the sanctions under K.S.A. 2024 Supp. 60-237(b)(2)(A)(1) appropriate and found "that the facts established by the petitioner regarding child support, legal custody, residency, and parenting time are established." The district court found it had personal and subject matter jurisdiction, as well as home-state jurisdiction for entering custody orders for the minor children. The court adopted Mother's child support worksheet and found Mother's proposed parenting plan to be in the best interests of the children. It granted Mother sole legal custody in the best interests of the children.

Father appealed.

ANALYSIS

On appeal, Father raises five main issues: (1) the best interests of the child standard is unconstitutional; (2) the Kansas Family Law Code punishes children based on their parent's marital choices by denying them "two fit and equal parents;" (3) the district court lacked jurisdiction and the children lacked standing to pursue a claim under the Kansas Parentage Act, K.S.A. 23-2201 et seq.; (4) he was denied access to the courts and was denied due process; and (5) the district court erred when it adopted Mother's child support worksheet and proposed parenting plan after finding him in contempt of court.

I.      *The Best Interests of the Child Standard Is Not Unconstitutional*

*Standard of Review*

Under K.S.A. 23-3201, the district court "shall determine legal custody, residency and parenting time of a child in accordance with the best interests of the child." A challenge to a statute's constitutionality is a question of law subject to unlimited review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

5

*Discussion*

Father argues the court's application of the best interests of the child standard violates the Supremacy Clause and the Fourteenth Amendment to the United States Constitution. He asserts the best interests of the child standard "is unconstitutional as applied because the state failed to overcome the presumption of unconstitutionality" and is "facially unconstitutional because legislature failed to delegate a state official with sufficient authority to testify to novel justifications." Throughout his brief, Father contends the parental preference doctrine controls and the district court's use of the best interests of the child standard violated his constitutional right.

Kansas applies the parental preference doctrine in custody disputes between a fit parent and a nonparent. The best interests of the child, however, "is the appropriate standard to be applied in custody disputes between parents." *In re Guardianship of Williams*, 254 Kan. 814, 828, 869 P.2d 661 (1994).

In *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), the United States Supreme Court held: "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Further, a fit parent is presumed to act in the best interests of his or her children. 530 U.S at 69.

Still, the United States Supreme Court has also acknowledged: "'The best interests of the child' . . . is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody." *Reno v. Flores*, 507 U.S. 292, 303-04, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). And "[t]he goal of granting custody based on the best interests of the child is indisputably a substantial governmental interest . . . ." *Palmore v. Sidoti*, 466 U.S. 429, 433, 104 S. Ct. 1879, 80 L. Ed. 2d 421 (1984). The United States Supreme Court has acknowledged that the best interests of the children is the proper

standard to apply when analyzing claims between two fit parents. See *Reno*, 507 U.S. at 303-04. This same standard has also been adopted by Kansas courts. *Williams*, 254 Kan. at 828.

Father asserts the district court cannot "exercise arbitrary discretion to overrule *the agreement of two fit parents* regarding matters of conscience in child-rearing." (Emphasis added.) But Mother disputes there was an agreement, arguing that coparenting with Father was "kind of his way or the highway" and that "he just does not seem to want to follow the rules and doesn't seem to want to work together to get to a solution."

When "*both* parents have a fundamental right to the care and nurturing of their children and neither has a preeminent right over the other, their contest stands on different footing. It is not a third party or the State that seeks to intrude into the protected sphere of family autonomy." *Sacharow v. Sacharow*, 177 N.J. 62, 79-80, 826 A.2d 710 (2003). Instead, because the parties "seek the impairment of each other's rights . . . , the State is thrust into the role of 'mediator by necessity.'" 177 N.J. at 79-80. Here, the district court did not impose its will, under the best interests of the child standard, against the desires of two fit parents in agreement; instead, it sought to determine which parent's competing interests were in the best interests of the child.

Additionally, Father is misguided in his assertion that the State "failed to overcome the presumption of unconstitutionality" and "failed to delegate a state official with sufficient authority to testify to novel justifications." Father cites no authority to suggest the State was required to designate a state official who had to appear before the district court to prove the statutory scheme's constitutionality. Failure to support a point with pertinent authority or show why a point is sound despite a lack of supporting authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). This argument has been abandoned.

The best interest of the child standard is constitutional and was the proper standard to apply in this case.

II.     *The Kansas Family Law Code Does Not Punish Children Based on Their Parents' Marital Choices by Denying Them "Two Fit and Equal Parents"*

*Standard of Review*

A statute's constitutionality is a question of law subject to unlimited review. *Trotter*, 316 Kan. at 312.

*Discussion*

Father seemingly argues that the Kansas Family Law Code, K.S.A. 23-2101 et seq., "punishes" children of unwed parents because decisions regarding children of unwed parents are made based on the best interests of the child, rather than the parental preference doctrine used for children of married parents. He asserts this is "[p]unishing children for parental discord" and that it is not rationally related to any legitimate state interest. He alleges the best interests of the child standard and the Kansas Family Law Code "are facially unconstitutional for authorizing denial of fundamental rights under a scheme that denies constitutional guarantees for those rights."

Father asserts the Kansas Parentage Act is facially unconstitutional because it denies his children rights that other children enjoy—namely, the right "to have two full and equal fit parents in their lives, NOT a parent and a visitor." Father cites no authority to support that children have a right to "two full and equal fit parents in their lives." Nor do the cases Father cites support this argument. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority is

8

akin to failing to brief an issue. *In re Adoption of T.M.M.H.*, 307 Kan. at 912. This argument is abandoned.

Even assuming Father had not failed to adequately brief this issue, his argument is without merit. The district court's decision did not terminate Father's parental rights. The order granted sole legal custody to Mother and modified the parenting plan. Although a divorce decree or parenting plan modifies a noncustodial parent's rights, the noncustodial parent "still retains certain rights that cannot be disturbed *except* upon a finding of unfitness." (Emphasis added.) *Yoder v. Yoder*, 11 Kan. App. 2d 330, 333, 721 P.2d 294 (1986). To be clear, Father's parental rights were not terminated in this case.

Unless parenting time "would seriously endanger the child's physical, mental, moral or emotional health," parents have a right to reasonable parenting time with their children. K.S.A. 23-3208(a). And an award of sole legal custody to one parent does "not deprive the other parent of access to information regarding the child . . . ." K.S.A. 23-3206(b). The Kansas Family Law Code does not deny Father the right to parent his children; it merely modifies his rights somewhat. Nor does the Kansas Family Law Code punish the children by depriving them of a parent.

III.     *The District Court Had Jurisdiction and the Plaintiff Had Standing to Pursue a Claim Under the Kansas Parentage Act, K.S.A. 23-2201 et. seq.*

*Standard of Review*

"The question of standing is one of law over which this court has unlimited review." *In re L.L.*, 315 Kan. 386, 390, 508 P.3d 1278 (2022).

*Discussion*

Father argues the district court had no jurisdiction "to issue discovery orders, hold contempt hearings, to issue contempt orders, to issue any relief to Plaintiff in the children's interests, or to make dispositional orders regarding the children's alleged right of income-based child support against their fit father's property rights and parental authority to directly care for them."

Subject matter jurisdiction, which is derived from the Kansas Constitution and Kansas statutes, "is the power of the court to hear and decide a particular type of action." *Chalmers v. Burrough*, 314 Kan. 1, 7, 494 P.3d 128 (2021). Under Article 3 of the Kansas Constitution, district courts "shall have such jurisdiction . . . as may be provided by law." Kan. Const. art. 3, § 6(b). Under K.S.A. 20-301, the district courts "shall have original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law."

Standing is "'a party's right to make a legal claim or seek judicial enforcement of a duty or a right.'" *In re Adoption of T.M.M.H.*, 307 Kan. at 908. To pursue a cause of action, "a party must have both statutory and common law standing . . . ." *In re L.L.*, 315 Kan. at 396. Under K.S.A. 23-2209(a)(1), "a child or any person on behalf of such a child, may bring an action" to "determine the existence of a father and child relationship." A mother, the child, and any man presumed or alleged to be the father must be made a party to the action. *In re L.L.*, 315 Kan. at 392. Thus, the children have statutory standing to pursue a claim under the Kansas Parentage Act.

To establish common law standing, a party "must have a 'sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy.'" *In re Adoption of T.M.M.H.*, 307 Kan. at 908. A child clearly has "a sufficient stake in the outcome" of whether a person is declared the child's parent.

Further, under K.S.A. 23-2210(a), the district court has jurisdiction over actions brought under the Kansas Parentage Act. When "both parents are parties to the action, the court shall enter such orders regarding custody, residency and parenting time as the court considers to be in the best interest of the child." K.S.A. 23-2215(d). Accordingly, the district court had jurisdiction over this action brought under the Kansas Parentage Act, and Father's children had standing to pursue claims under the Act.

IV.  *The District Court Did Not Deny Father Access to the Court and Did Not Deny Father's Due Process*

*Standard of Review*

"'Whether a right to due process has been violated is a question of law, over which an appellate court exercises unlimited review.'" *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012).

*Discussion*

Father's arguments regarding access to the court are particularly difficult to parse. In his discussion of this issue, Father essentially makes four arguments. First, he alleges the State was required to appear and present evidence to overcome a presumption of unconstitutionality. Next, Father contends the district court was biased against him because the district court "is actively denying him any possibility of adjudicating his challenges to [the Kansas Family Law code]." Third, Father claims the district court recognized he was entitled to due process but refused "to provide notice of what process is due." Finally, Father argues the district court's child support order made him "an indentured servant in violation of federal peonage statutes and the Thirteenth Amendment."

11

First, citing *Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, 440 P.3d 461 (2019), Father appears to believe the State was required "to serve notice of specific intent to politically enforce its regulations." He contends the State was required "to appear, establish standing, present evidence through testimony subject to confrontation, and cross-examination sufficient to overcome the presumption of unconstitutionality." But *Hodes* does not require that. Instead, in *Hodes*, the State had to overcome a presumption of unconstitutionality *because it was a party to the action*. Here, the State is not a party to the paternity action. Father was not denied due process because the State did not appear.

Second, Father's claim of bias must fail. He provides neither legal authority nor factual support for his claim of bias. The only evidence of bias Father discusses is the district court's failure to apply his erroneous legal conclusions and the fact that the district court received its jurisdiction from the Kansas Family Law Code—which Father challenged the constitutionality of. Adverse rulings are insufficient to establish bias. *Smith v. Printup*, 262 Kan. 587, 608, 938 P.2d 1261 (1997). The district court was not biased against Father.

Third, Father asserts the district court refused "to provide notice of what process is due." It is unclear what Father means. To the extent that Father argues the district court had to explain the legal process to him, he is clearly incorrect. "'A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court.'" *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022).

Rather, a parent's right to due process fundamentally requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). Because a parent has a fundamental right in the care, custody, and control of his or her child, a parent is entitled to due process before being deprived of that right. But to establish a due process violation, a parent must "establish that he or she

was denied a specific procedural protection to which he or she was entitled." 284 Kan. at 166.

Here, Father has not identified any specific procedural protection which he was denied. Although a return of service is not included in the record, Father answered Mother's petition. Similarly, Father was served a copy of the accusation of contempt and motion for order to show cause to appear as well as the affidavit in support of a contempt accusation. Father appeared at the July 10, 2024 contempt hearing. He has not shown he was denied due process.

Finally, Father's last argument—that the district court's child support order made him an indentured servant—is also easily resolved. Under the Thirteenth Amendment to the United States Constitution, "[n]either slavery nor involuntary servitude . . . shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. But "child-support awards fall within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery." *United States v. Ballek*, 170 F.3d 871, 874 (9th Cir. 1999). The district court's child support order did not violate the Thirteenth Amendment.

Father cites *Gomez v. Perez*, 409 U.S. 535, 93 S. Ct. 872, 35 L. Ed. 2d 56 (1973), suggesting it "defeats any state claim compelling necessity for child support. . . ." But *Gomez* held that children from unwed parents are *entitled* to child support, not just children born to a marriage. 405 U.S. at 538.

None of the issues Father raised regarding "access to the court" have merit. The district court did not deny Father access to the court.

V.     *The District Court Did Not Err When It Found Father in Contempt and Adopted Mother's Child Support Worksheet and Parenting Plan.*

*Standard of Review*

"Whether the doctrine of invited error applies is a question of law subject to unlimited review." *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021).

*Discussion*

On appeal, Father argues he was not "provided notice that child custody issues could be resolved resulting from an unrelated discovery dispute regarding his financial records." Father asks this court to address all of the issues in his counterpetition requesting declaratory relief directly. He asserts the contempt proceeding denied him "any further opportunity to develop a court record demonstrating in nauseating detail how grossly and pervasively unconstitutional" the district court's actions were. He contends the district court did not have the authority in enforcing "a discovery order" the court "knew to be a nullity" to "authorize broadly stripping parents and children of core, natural, fundamental rights" because the Kansas Parentage Act is "presumptively unconstitutional."

Father attempts to incorporate "Doc. 87"—his objections to the district court's orders and motion for new trial—by reference and "reasserts all of the arguments from Doc. 87 herein." But "[l]itigants cannot incorporate arguments by reference to briefs filed in the district court." *N&B Enterprises, Inc. v. English*, No. 126,339, 2025 WL 289235, at *12 (Kan. App. 2025) (unpublished opinion).

"[A] party may not invite error and then complain of that error on appeal." *Aeroflex Wichita, Inc. v. Filardo*, 63 Kan. App. 2d 588, 604, 534 P.3d 610 (2023). Here,

14

the district court advised Father that if he did not abide by the district court's orders, the court could enter a judgment for child support, custody, and parenting time. Father replied, "That is fine." Father invited the error he now complains of on appeal.

Even if Father had not invited the error he now complains of, Father would not be entitled to relief. In her affidavit supporting contempt, Mother specifically asked that the district court enter a default judgment against Father. Father was served with the motion, order to show cause, and affidavit of contempt on June 26, 2024. Father cannot argue he had no notice that child support and custody decisions may be made as part of the contempt proceedings.

The district court did not err by finding Father in contempt and adopting Mother's parenting plan and child support worksheet.

VI.    *Father's Remaining Issues are Without Merit*

In a section of his brief entitled "Common Argument," Father raises two issues that do not appear elsewhere in his brief. First, he argues the parenting plan, custody, possession, legal-decision-making, and support orders "are prior restraints" on his First Amendment to the United States Constitution rights. Second, Father contends that an action under the Kansas Parentage Act is no different than "the state action of the court in [child in need of care] cases and the procedural due process mandate is exactly the same."

Although Father cites numerous cases, he fails to cite any supporting authority for his censorship argument. Instead, the cases Father cites discuss First Amendment violations in other contexts, including termination of employees, obscenity, public comment at school board meetings, and abortion clinic setbacks. He cites no cases applying First Amendment concerns to parenting plans, child support, or custody disputes, and our research has found none.

15

Similarly, Father cites no authority to suggest that claims under the Kansas Parentage Act are "exactly the same" as child in need of care cases. Failure to support a point with pertinent authority or show why a point "'is sound despite a lack of supporting authority, is akin to failing to brief an issue.'" *In re Adoption of T.M.M.H.*, 307 Kan. at 912. Father has abandoned these issues.

Affirmed.