**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1493-20

M.A.,

    Plaintiff-Respondent,

v.

A.A.,

    Defendant-Appellant.

_____

          Argued May 24, 2021 – Decided June 30, 2021

          Before Judges Messano, Hoffman, and Suter.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FM-01-0537-18.

          Phyllis Widman argued the cause for appellant.

          Steven P. Scheffler argued the cause for respondent (Reynolds & Scheffler, LLC, attorneys; Kendyll G. Clayton, on the brief).

PER CURIAM

Defendant A.A. appeals a January 21, 2021 Family Part order entered following a bench trial that appointed plaintiff M.A. as the limited medical guardian of vaccinations for their daughter. We affirm the order, finding substantial credible evidence in the record to support it.

I.

A.

Plaintiff and defendant were married in 2005. They have one child — A.A. (Adele)[1] who was born in July 2013. The parties divorced in February 2018. As part of their divorce, they entered into a Marital Settlement Agreement (MSA).

Under the MSA, the parties share joint legal and physical custody of Adele. Paragraph 5.1 of the MSA provides:

> 5.1. It is the parties' intention to share joint physical and legal custody of their daughter, [Adele], without the designation of a parent of primary residence. The parties considered their ability to communicate and share all the needs of [Adele], <u>and further agree that their daughter's best interest is paramount</u>. . . . [T]he parties shall immediately notify the other in the event of an emergency situation involving [Adele] and agree to provide the other with emergency telephone numbers.

---

[1] We use initials and a pseudonym to maintain the confidentiality of the child. R. 1:38-3(d).

A-1493-20

[(emphasis added).]

Under paragraph 5.2, plaintiff and defendant both agree they "shall conduct themselves in a manner that shall be best for the interest, welfare, and happiness of [Adele]." The MSA did not address the procedure for resolving disputes between plaintiff and defendant in the event of a disagreement about how to address a medical emergency involving Adele. It did not mention either parent's religious beliefs or how those might relate to Adele.

The MSA also did not mention vaccinations for Adele. This was even though on June 26, 2015 — before they were separated in September 2015 — they submitted a letter to Adele's preschool that claimed a religious exemption from vaccination requirements. This letter provided:

> To Whom It May Concern:
>
> As parents, based on our personal religious beliefs, we object to the following vaccinations, including but not limited to, Dtap/DPT, HepB, Hib, Tetanus (TB), MMR, Polio, and Varicella (Chicken Pox), for our child, [Adele].
>
> Our child's body is the Temple of God. Our family's religious beliefs prohibit the injection of foreign substances into our bodies. To inject into our child any substance which would alter the state into which she was born would be to criticize our Lord and question His divine omnipotence. Our faith will not allow us to question our Lord and God, nor challenge His divine power.

A-1493-20

The letter quoted from the Bible. It noted that their objection "is based on our lifelong deeply-held spiritual beliefs based on scripture." The letter said that vaccination of Adele "violates laws put forth within us by a higher force . . . ." The letter concluded with:

> Our personal religious beliefs include our obedience to God's law, the Holy Bible, and we believe that we are responsible before God for the life and safety of our child, created by God.

After their divorce, they provided a letter to their local Board of Education on August 3, 2018, that again requested a religious exemption for Adele to attend kindergarten without the State law required vaccinations. It contained much of the same language as the earlier letter.

B.

Plaintiff testified that on April 11, 2019, Adele stepped on a rusty nail that punctured her foot. He took her to the hospital where she received a diphtheria, tetanus, and pertussis (DTaP) vaccination. Plaintiff testified he advised defendant that Adele received these vaccinations. Adele did not have an adverse reaction.

A few weeks later, defendant and Adele were scheduled to go to Bulgaria. Plaintiff opposed this because Adele did not have all her vaccinations. On May 10, 2019, plaintiff filed an order to show cause and verified complaint in the

A-1493-20

Family Part seeking to enjoin defendant from taking Adele out of the country. Defendant objected because she previously vacationed with Adele in Bulgaria even though she was not vaccinated. On May 16, 2019, the Family Part judge denied plaintiff's OTSC and allowed defendant and Adele to go to Bulgaria because she previously travelled there without vaccinations.

After Adele returned, plaintiff took her for follow-up vaccinations. On May 29, 2019, she received a second tetanus shot and the "MMR" vaccine for measles, mumps, and rubella. Plaintiff authorized these shots without the knowledge or consent of defendant. Adele developed a rash in an area on her back sometime between one to four weeks later. Her pediatrician, Dr. Edwin Lopez-Bernard, examined the rash on June 26, 2019, and diagnosed it as contact dermatitis from something Adele had touched.

The day earlier — June 25, 2019 — defendant filed a motion in the Family Part seeking sole custody of Adele and to enjoin plaintiff from having any more vaccinations administered to Adele. Defendant claimed she and plaintiff agreed not to vaccinate Adele and that they submitted a "religious exemption" from vaccination for her attendance at school. She alleged plaintiff "deceptively went behind [her] back" to have Adele vaccinated.

A-1493-20

Plaintiff filed a cross-motion requesting sole legal authority to make medical decisions for Adele, including decisions about vaccinations. In the alternative, plaintiff requested a plenary hearing. In plaintiff's supporting certification, he alleged vaccinations were needed to keep Adele "safe and healthy" for school. Plaintiff wanted age-appropriate vaccinations. Plaintiff alleged defendant was against all vaccinations based on "conspiracy theories" and not because of any religious objection; in fact, he alleged defendant was an atheist. On August 30, 2019, plaintiff consented to refrain from further vaccination pending further court order.

## C.

The trial court conducted a three-day plenary hearing in August 2020. We summarize the trial evidence only as necessary to address the points raised on appeal.

Dr. Arthur Edward Brawer testified for defendant as an expert in rheumatology and immunology. He reviewed Adele's records from the Children's Hospital of Philadelphia (CHOP) when she was admitted in 2017. He met with defendant and discussed Adele's growth and development. Dr. Brawer testified Adele had a "diathesis or a tendency to autoimmune problems." He also examined Adele.

6

Dr. Brawer testified that in April 2019, Adele received the DTaP vaccination and later the MMR vaccine. In June 2019, she received another DTaP and MMR vaccine. She developed what he said was a diffuse skin rash on her trunk and extremities. From photographs of the rash, Dr. Brawer diagnosed this as a "systemic allergic reaction" to the vaccines given in June.

In August 2017, when she was four years old, Adele had idiopathic thrombocytopenia purpura (ITP) caused by a virus that attacked her body's platelets. After a discussion about vaccines and the autoimmune disorders that can occur from vaccines, Dr. Brawer testified that a person with a previous autoimmune condition is at risk. He testified that Adele is

> at very high risk for a life-threatening autoimmune problem, which with the next vaccination doesn't have to necessarily be low platelets. It could be a severe vasculitis. It could be a stroke. It could be anything. It could be a life-threatening inflammatory and immunologic disorder and it doesn't necessarily have to involve platelets.

He testified this could happen because Adele already had ITP and a skin rash. Dr. Brawer opined it was "mandatory to minimize the risk benefit ratio in this patient and to minimize the risk." He concluded Adele is at "high risk for a li[fe]-threatening disorder if she's vaccinated." He expressed that it would be

7

better to let "her go her merry way and just get a viral infection of any kind, mumps, measles, whatever."

Dr. Brawer testified that for the vast majority of people, contracting "natural viral infections" does not "pose any risk . . . ." He also testified vaccines "prevent a whole host of infectious diseases, which has been a great achievement in medicine to have this type of protection from dreaded diseases that previously could have been fatal or could have reaped significant morbidity on people." Dr. Brawer offered that it is "a great thing that we can [vaccinate] hundreds of millions of people to prevent against dreaded diseases. That's a fact."

Dr. Brawer testified that his opinions were based on his knowledge, experience, research, examination of the child, review of CHOP records and a discussion with defendant. He did not speak with plaintiff or with Dr. Lopez-Bernard. He did not review any of Dr. Lopez-Bernard's records. Defendant told him about the results of blood tests taken after Adele had ITP, but he did not review them. He determined — based solely on photographs — that the rash was a systemic reaction and not prickly heat. He did not order any follow-up laboratory tests.

Dr. Lopez-Bernard testified that he has been Adele's pediatrician since 2017. He testified as an expert in pediatrics and in vaccines, but the court

8

limited the scope of his testimony to his medical practice, his training and experience, and the manner in which he administers vaccines.

Dr. Lopez-Bernard testified vaccines are "highly effective." In his eighteen years as a pediatrician, he vaccinated approximately 63,000 patients. None of his patients experienced major effects from the vaccinations. In his opinion, the benefits of vaccinations are greater than the risks of possible side effects. Dr. Lopez-Bernard testified that death from vaccines was rare.

Dr. Lopez-Bernard first saw Adele in August 2017 because of a nosebleed that would not stop. He referred her to the hospital where she was diagnosed with idiopathic ITP. Defendant told him she was not happy that Adele needed to receive platelets and a blood transfusion for ITP. He saw Adele again on September 20, 2017, and by then she no longer had ITP. Dr. Lopez-Bernard suggested to defendant that Adele should receive vaccinations, but she would not agree. He has seen Adele a total of ten times. He discussed vaccinations with defendant on two or three occasions. She never raised a religious based objection to vaccinations.

Dr. Lopez-Bernard testified that in April 2019, Adele stepped on a rusty nail. Plaintiff took her to the hospital where she received the DTaP vaccination.

9

She did not have any side effects. On May 29, 2019, Adele received the MMR and DTaP vaccinations.

On June 26, 2019, Dr. Lopez-Bernard treated Adele for a rash on her back that he diagnosed as simple contact dermatitis. He did not relate this to the vaccinations. Dr. Lopez described Adele as "very healthy." She was "medically and physically clear to receive vaccinations." She did not have chronic ITP. At his earlier deposition, Dr. Lopez-Bernard testified Adele has an increased risk of ITP of "[three] to [five percent] compared to the general population."

Dr. Lopez-Bernard testified that in his experience, a specialist generally conducts additional analyses such as imaging, bloodwork, fluid tests, and a urinalysis. He said he will treat Adele even if she is not vaccinated and encourage her to become vaccinated.

Defendant claimed the topic of vaccinations was not included in the MSA because plaintiff and she agreed not to vaccinate Adele. She claimed plaintiff prepared the religious exemption letters for Adele's preschool and kindergarten. She did not know the source of the language used in the letters.

Defendant testified she thought plaintiff did not act in Adele's best interest. He arranged for Adele to have the MMR vaccine without discussing this with a specialist or with her.

A-1493-20

On cross-examination, defendant testified she did not recall if she was vaccinated before she came to the United States when she was twenty. Defendant opposed vaccinations based upon their safety and efficacy. She also opposed the manner that vaccines were produced, which was against her religious views. She asserted that her moral and religious views about vaccines are intertwined. Plaintiff acknowledged she said previously that vaccines will be declared a crime against humanity and a gross violation of human rights. Plaintiff testified she had religious beliefs against vaccinations from a very young age. Despite this, she did not think she asked for a religious exemption for herself when she immigrated to the United States. She did not apply for a religious exemption when she went to college, and she had breast implant surgery in 2011.

Plaintiff testified he married defendant in 2005. They never discussed vaccinations until defendant was pregnant with Adele. He was raised as a Catholic. He testified defendant is an atheist. Although they often discussed the topic of vaccinations, the issue of a religious objection never came up. He never heard defendant raise a religious based objection to vaccinations. Plaintiff testified he was never against vaccinating Adele. He simply was submissive to defendant's position on this.

11

Plaintiff testified that the subject of vaccination for Adele was raised during their divorce mediation. He agreed to delay vaccinations to keep the peace. The wording in the 2015 religious exemption letter came from a realtor they both knew who suggested using the letter because it was "bulletproof." Plaintiff testified the letters did not reflect the religious beliefs of plaintiff or defendant. Both letters were a "fraud" to get Adele in school.

Plaintiff testified he wants Adele to be vaccinated because vaccines are safe and effective. He believes it is in Adele's best interest to receive medically recommended vaccinations. In the fifteen years he was with defendant, she never raised a sincere religious concern about vaccinating the child. He testified she only raised religious concerns in court.

D.

On January 21, 2021, the trial court denied defendant's motion to prevent plaintiff from vaccinating Adele. It appointed plaintiff as limited medical guardian for immunization purposes only.

In its written decision, the Family Part judge noted both parties supported their arguments with expert testimony. However, the court found "the two medical experts are in equipoise and did not aid the court in finding for or against [d]efendant's application to enjoin [p]laintiff from immunizing [Adele] . . . ."

With respect to defendant's expert, the court found his methodology was "lacking" because he did not interview plaintiff about his family medical history, conduct additional testing of Adele, or review the records from her pediatrician. He did not identify the cause of any potential autoimmune problem or the risk posed to Adele "by identifying the percentage of people who have serious reactions to immunizations who are similarly situated to [Adele]." The court found Dr. Brawer's testimony "fell far short in demonstrating . . . that there is a discernable risk to the minor child in having a serious adverse reaction to immunization."

The trial court found that plaintiff's medical expert was credible, but he did not have the knowledge about vaccine-related injuries that would permit the court to conclude there was no risk to the child from the immunization. The doctors agreed, however, that immunizations are "very important in preventing and defending against serious diseases," most people "do not experience serious adverse effects," Adele did not have a negative reaction to vaccines except for the disputed rash and she recovered from other illnesses without a reoccurrence of ITP, and that "in general, vaccines provide health benefits."

The court considered the case under the best interests of the child standard in N.J.S.A. 9:2-4. It found that defendant "failed to demonstrate . . . there is a

significant risk of [Adele] experiencing a recurrence of ITP if immunized." The court also found there was only a "[three to five percent] chance of serious vaccine injury to the minor child." Thus, "solely in a medical context," the court found it was in Adele's best interest to appoint one parent as the sole decision maker for immunizations. The court denied defendant's application to enjoin Adele from being immunized for medical reasons because using a best interest of the child analysis, "the benefits of immunization outweigh the potential risks to [Adele]."

Defendant asserted a religious exemption under N.J.S.A. 26:1A-9.1. She admitted she did not assert any religious exemption against vaccination when she immigrated to the United States or when she was admitted to college, even though proof of vaccination was required for both. Defendant personally did not recall if she was vaccinated. She said the issue of vaccination did not occur to her prior to the child's birth.

The trial court did not find defendant to be a credible witness. It explained that defendant was "combative," contradicted herself, "changed her testimony when pressed" and delayed in answering. She "experienced convenient forgetfulness[,] . . . [and] lied on innocuous points." The court found defendant "engaged in a revisionist history of her relationship with [p]laintiff, her belief

and use of the religious exemption and lied about inconsequential facts . . . . Her level of inconsistency and lack of candor to this court demonstrate that she is not a believable witness." The court concluded that its decision "results from [d]efendant's shear [sic] lack of credibility."

The court found plaintiff's testimony was "very credible." He was not evasive in his answers nor exaggerated. The court required defendant to bear the burden of proof that it was in the child's best interest not to be immunized and that this was based on religious reasons.

The trial court found that N.J.S.A. 26:1A-9.1 and applicable regulations did not apply in this type of case, where the dispute is between former spouses with co-equal custodial rights who disagree about vaccination. It concluded the best interest of the child standard required it to make "full findings of fact" and to do so required inquiry into defendant's assertion of an exemption based on religion.

The trial court found it was appropriate, in accord with federal case law, to adopt a sincerity analysis. The court found defendant was inconsistent in her religious beliefs and her practices. It found defendant changed her story several times, had a selective memory and lacked candor. The court was "left with the impression that [defendant was] hiding behind a falsehood of religious doctrine

15

in order to further a philosophical and moral stance." She "avoided questions, contradicted herself on several occasions, demonstrated selective memory and outright lied to this court during her testimony." Therefore, the trial court found her not to be "truthful with regard to her religious beliefs," which was the basis for her argument that she should decide whether the child should be vaccinated.

The court considered the child's best interest. Neither expert demonstrated whether immunizing Adele exposed her to a serious risk, would injure her or cause ITP. The court found that the child should be immunized "for her protection and the protection of others." However, the trial court also was concerned with defendant's First Amendment rights to free exercise of her religion. The court resolved what it perceived as the conflict between the two by applying the federal sincerity test and then the best interest standard. The court found defendant lacked "sincerity and consistency" in her claim of religious freedom. The court also found the medical experts agreed there was a small chance of a reoccurrence of ITP and overall that vaccines were safe and effective. As such, it concluded it was appropriate for the child to be vaccinated and appointed plaintiff as sole guardian for immunization purposes. The court stayed its decision for ten days to permit an appeal.

16

E.

Defendant requested emergent relief, which we granted on February 11, 2021. We also stayed the Family Part orders pending appeal.

On appeal defendant raises these issues:

POINT I: THE TRIAL COURT ERRED IN ITS FACTUAL FINDINGS AND ABUSED ITS DISCRETION IN HOLDING THAT THE TWO MEDICAL EXPERTS WERE IN EQUIPOISE.

POINT II: THE TRIAL COURT ERRED IN APPLYING THE INCORRECT STANDARD, OF A "SINCERITY TEST," WHICH WAS A MISAPPLICATION OF THE NEW JERSEY RULES OF EVIDENCE, AND VIOLATIVE OF DEFENDANT'S FUNDAMENTAL CONSTITUTIONAL RIGHTS.

POINT III: IN THE ALTERNATIVE, IF A "SINCERITY TEST" APPLIES, THE TRIAL COURT ERRED IN ITS FACTUAL FINDINGS SINCE THERE WAS NOT SUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT ITS DECISION THAT DEFENDANT'S ASSERTION OF THE RELIGIOUS EXEMPTION WAS NOT SINCERE.

POINT IV: THE TRIAL COURT ERRED BY HOLDING THAT THE BEST INTEREST OF THE CHILD STANDARD, SET FORTH IN N.J.S.A. 9:2-4, OUTWEIGHS DEFENDANT'S FUNDAMENTAL RIGHT TO FREEDOM OF RELIGION.

POINT V: THE TRIAL COURT ERRED IN ITS FACTUAL FINDINGS IN CHOOSING PLAINTIFF

17

AS THE PARENT FOR SOLE DECISION MAKING REGARDING VACCINATIONS.

POINT VI:  THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE PLAINTIFF'S EXHIBIT 21.

POINT VII:  IN THE ALTERNATIVE, REQUEST THAT THE APPELLATE DIVISION MAKE A FACT FINDING AS TO DR. BRAWER'S MEDICAL EXEMPTION.

POINT VIII:  AS A CASE OF FIRST IMPRESSION, DEFENDANT PROPOSES THAT THE STANDARD SHOULD BE IF ONE PARTY/PARENT ASSERTS THE EXEMPTION, THEN IT MUST BE ADHERED TO FOR THE CHILDREN AT ISSUE.

II.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citations omitted), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We afford a deferential standard of review to the factual

findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We conclude there was substantial credible evidence in the record to support the court's findings that it was in the child's best interest to appoint plaintiff as sole decision maker regarding vaccinations. This matter was before the trial court on defendant's motion to change custody and to enjoin plaintiff from having Adele further vaccinated based on medical and religious grounds. Plaintiff filed a cross-motion to award him sole legal authority to make these decisions.

In a child custody case, the best interests of the child are a paramount consideration. Beck v. Beck, 86 N.J. 480, 497 (1981). The court should seek

19                                                                                          A-1493-20

to advance these interests when the parents "are unable to agree on the course to be followed." Asch v. Asch, 164 N.J. Super. 499, 505 (App. Div. 1978). What is in the child's best interest may have the effect of limiting parental rights. See Sacharow v. Sacharow, 177 N.J. 62, 80 (2003). When the parties submit their disputes to the Family Part, the court may "impair to some extent one of the parties' parental rights," and in such cases "the sole benchmark is the best interests of the child." Id. at 79-80.

A court should consider several factors in determining custody arrangements. N.J.S.A. 9:2-4(c). "[U]nder a joint custody arrangement, legal custody — the legal authority and responsibility for making 'major' decisions regarding the child's welfare — is shared at all times by both parents." Id. at 81 (quoting Beck, 86 N.J. at 486-87). Although the rights of joint custodians are equal, a court can order sole custody to one parent or "[a]ny other custody arrangement as the court may determine to be in the best interests of the child." N.J.S.A. 9:2-4(c). We review the Family Part judge's determination to determine if there was substantial credible evidence in the record. Cesare, 154 N.J. at 411.

Defendant contends that because she asserted an objection to vaccinating Adele based on religious grounds, the best interest of the child standard does not

apply. We reject that argument on multiple grounds starting — in this case — with the language of the parties' MSA, where they agreed in section 5.1 that "their daughter's best interest is paramount."

Settlement agreements in matrimonial cases are contracts that should be enforced as long as they are fair and just. Petersen v. Petersen, 85 N.J. 638, 642 (1981); see also Lepis v. Lepis, 83 N.J. 139, 146 (1980) (matrimonial settlement agreements are enforceable "to the extent that they are just and equitable" (quoting Schlemm v. Schlemm, 31 N.J. 557, 581-82 (1960))). "A settlement agreement is governed by basic contract principles." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)). In interpreting and enforcing a settlement agreement, a court is to "discern and implement the intentions of the parties." Ibid. (citation omitted).

The trial testimony revealed that plaintiff and defendant submitted a letter to Adele's pre-school in 2015 claiming a religious exemption from vaccination. Then when they negotiated the MSA, the issue of vaccinations was disputed. The fact that the parties chose the best interest standard for their MSA and said it was paramount shows this is the standard they intended to apply in custodial decisions involving Adele. The judge did not err in applying the best interest standard considering their MSA.

A-1493-20

Defendant contends that vaccination is not in the medical best interest of Adele. Defendant relied on Dr. Brawer's testimony that Adele had a "diathesis" or tendency to autoimmune problems and she was at "high risk for a life-threatening auto immune problem . . . ." Dr. Lopez-Bernard testified that Adele was very healthy. She was no longer suffering from ITP. She had tolerated the vaccinations, and the skin rash was not related to vaccination.

We do not find the trial court erred in evaluating the testimony of the expert witnesses. A finder of fact can accept or reject the testimony of any party's expert or accept only a portion of an expert's opinion. Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002). "[T]he weight to be given to the evidence of experts is within the competence of the fact-finder." LaBracio Fam. P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001). As a reviewing court, we should "defer to the trial court's assessment of expert evaluations." N.J. Div. of Youth & Family Servs. v. H.R., 431 N.J. Super. 212, 221 (App. Div. 2013).

The court found shortcomings with the medical history and methodology testified to by Dr. Brawer. He did not speak with plaintiff about his health but relied on what defendant told him. He did not review Dr. Lopez-Bernard's records or speak with him even though he was Adele's pediatrician. He did not

conduct any independent medical testing of Adele to support his conclusions about her health. His diagnosis of Adele's rash was made based on a photograph rather than an actual examination, as Dr. Lopez-Bernard had done. He could not identify the cause of any potential autoimmune condition that applied in Adele's case or whether others like Adele had serious reactions from vaccinations.

Dr. Lopez-Bernard is Adele's pediatrician. Although he saw Adele's rash first-hand, it was clear from his testimony he did not have an expertise in vaccine related injuries. He testified from his own experiences in giving vaccinations. Both experts testified about the efficacy of vaccinations.

We cannot say based on this record that the trial court erred by finding the experts in equipoise on the issue of defendant's application to enjoin plaintiff from having Adele receive additional vaccinations. The trial court found shortcomings with both experts. However, where they agreed, it relied on their opinions in assessing the child's best interest. Both experts testified about the importance of vaccines in preventing serious diseases.[2] Although the parties

---

[2] "We recognized almost sixty years ago that 'vaccination and immunization are effective health measures, reasonably related to and necessary for the public health, safety and welfare.'" N.J. Div. of Child Prot. and Permanency v. J.B., 459 N.J. Super. 442, 455-56 (App. Div. 2019) (quoting Bd. of Educ. of Mountain

stipulated vaccines can cause death, the doctors testified that most people do not have serious adverse effects. No one testified that Adele's ITP was the result of vaccinations. The trial court found Dr. Brawer's testimony did not show there was a "discernible increased risk to [Adele] in having a serious adverse reaction to immunization" and that defendant had not met her burden. Taking all this into consideration, the court concluded that it was in the child's best interest for plaintiff to decide issues involving vaccinations for Adele. There was substantial credible evidence in the record to support that order.

Defendant contends she is opposed to vaccinations on religious grounds. She argues a court should not evaluate the sincerity by which she holds and asserts this right, and that once asserted, it requires that Adele shall not be vaccinated even if plaintiff's wishes are to the contrary. If a sincerity test were to apply, defendant argues the trial court misapplied it because there was not enough evidence to determine her sincerity. Defendant argues that a "sincerity" analysis of her religious-based objection to vaccination is precluded by N.J.S.A. 26:18-9.1.

---

Lakes v. Maas, 56 N.J. Super. 245, 258 (App. Div. 1959), aff'd o.b., 31 N.J. 537 (1960)).

We disagree with defendant's arguments. The religious exemption under N.J.S.A. 26:1A-9.1 does not apply.

The statute provides:

> Provisions in the State Sanitary Code in implementation of this act <u>shall provide for exemption</u> for pupils from mandatory immunization if the parent or guardian of the pupil objects thereto in a written statement signed by the parent or guardian upon the ground that the proposed immunization interferes with the free exercise of the pupil's religious rights. This exemption may be suspended by the State Commissioner of Health during the existence of an emergency as determined by the State Commissioner of Health.
>
> [N.J.S.A. 26:1A-9.1 (emphasis added).]

By its express language, the statute concerns the attendance of children at school who have not been vaccinated. It does not address the situation presented here, involving parents with equal custodial rights who do not agree about the medical treatment of their child. Defendant has not cited any legal authority that applies the statute in this context. Defendant's citation to a memorandum issued by the DOH — which suggests the requested exemption should not be questioned by the school district that receives it — is not controlling on the court. The memorandum is at best an expression of that agency's policy; it does

not constitute a best interest analysis when one parent seeks sole custody to make decisions regarding immunizations.

Defendant argues her assertion of the religious exemption cannot be analyzed for sincerity because it is a fundamental right. This argument does not fully appreciate the basis for the court's order. The trial court's order, appointing plaintiff as the sole parent for vaccination decisions, was rooted in its determination that defendant's testimony lacked credibility. In its judgment, defendant simply was not a credible witness.

We defer to the court's credibility findings. We do not disturb them unless they are "manifestly unsupported by or inconsistent with" the competent evidence. Pascale v. Pascale, 113 N.J. 20, 33 (1988). "Because a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Cesare, 154 N.J. at 412 (alterations in original) (other citations omitted) (quoting Pascale, 113 N.J. at 33).

The trial court did not abuse its discretion in determining credibility. It thoroughly supported its findings based on defendant's delay in answering questions, avoidance of other questions, and answers that showed a selective memory or that went beyond the scope of the question to support her position.

The court noted defendant seemed flustered at times on questions she should have been able to answer and experienced "convenient forgetfulness" on questions about religious continuity and sincerity. The court also concluded she "lied on innocuous points."

Although the trial court determined that defendant lacked "sincerity and consistency" in her claim about the religious basis of her objection to vaccinations, we believe this case can be resolved based on the court's credibility determination. Defendant was found not to be a credible witness. The trial court determined the child's best interest in reliance on testimony that it found to be credible. Arguably, there was no necessity to evaluate the sincerity of defendant's assertion of her religious beliefs when she simply was not a credible witness.

That said, we do not agree with defendant's argument that the trial court was without the ability to review her claim for sincerity because it is based on religion. The free exercise clause "does not protect all deeply held beliefs . . . ." Africa v. Pa., 662 F.2d 1025, 1034 (3d Cir. 1981). "To fall within the purview of the Free Exercise Clause, a claimant must possess a sincere religious belief." DeMarco v. Davis, 914 F.3d 383, 388 (5th Cir. 2019). An assertion of a First Amendment religious freedom claim may be broken down into two

threshold requirements. "A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." Africa, 662 F.2d at 1030 (citation omitted). That is, the belief must be "based upon what can be characterized as theological, rather than secular -- e.g., purely social, political or moral views." Stevens v. Berger, 428 F. Supp. 896, 899 (E.D.N.Y. 1977).

As the Supreme Court observed in United States v. Seeger, 380 U.S. 163, 185 (1965), the "significant question" is whether a belief is "truly held." "This is the threshold question of sincerity which must be resolved in every case." Ibid. It is not the task "for a reviewing court to attempt to assess the truth or falsity of an announced article of faith." Africa, 662 F.2d at 1030.

"[A]n adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief." Int'l Soc. for Krishna Consciousness, Inc. v. Barber, 650 F.2d 430, 441 (2d Cir. 1981) (citing Dobkin v. D. C., 194 A.2d 657 (D.C. 1963)). In Wis. v. Yoder, 406 U.S. 205, 215 (1972), the Court made clear that the Constitution did not protect views which were "based on purely secular considerations," but only those which were "rooted in religious belief."

The trial court's determination that defendant lacked sincerity in her claim about the religious basis of her objection was supported by the record. The court

highlighted inconsistencies in defendant's testimony. She could not remember if she was vaccinated or if she claimed a religious exemption when she immigrated or attended college. She had not asserted a religious exemption during the divorce or when she spoke with Dr. Lopez-Bernard. The language in the 2015 and 2018 letters was from another source and not from defendant. Her testimony about an aversion based on religion to injecting foreign substance into her body was inconsistent with her breast augmentation surgery. Defendant expressed moral and philosophical objection to vaccinations, likening them to violations of human rights.

The trial court's decision was not based on a misapplication of the Rules of Evidence. New Jersey Rule of Evidence 610 provides that "[e]vidence of a witness' religious beliefs or opinions is not admissible to attack or support the witness' credibility." N.J.R.E. 610. This Rule "does not exclude proof of religious beliefs or opinions when offered for another purpose that is material to an issue in the action." 1991 Supreme Court Committee Comment to N.J.R.E. 610 (citing In re Conroy, 98 N.J. 321, 361-62 (1985)). Another Evidence Rule provides that a person has a privilege not "to disclose his theological opinion or religious belief unless his adherence or nonadherence to such an opinion or

belief is material to an issue in the action other than that of his credibility as a witness." N.J.R.E. 512.

Defendant sought appointment as Adele's sole medical guardian for vaccinations allegedly because of her religious beliefs regarding vaccinations. Her assertion of religious opinions or beliefs, therefore, was material to the issue to be decided by the court. Testimony about the sincerity of her religious objection was not elicited as a blanket attack on her credibility based on the truth of her religious beliefs. Rather, the testimony was elicited to examine the material issue of whether her religious views against vaccinations were sincere or whether they were pretextual. The trial court did not abuse its discretion under either evidence rule by allowing such testimony.

Our careful review of the record shows there was substantial credible evidence for the court's findings. Defendant lacked credibility. She lacked sincerity and consistency in her assertion of her religious exemption. The experts agreed that overall vaccines are safe and effective and there was a small chance Adele's ITP would reoccur. Therefore, we affirm the order appointing plaintiff as limited medical guardian for immunization purposes. We also conclude that defendant's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1493-20