# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0425-23

Y.H.[1],

    Plaintiff-Respondent,

v.

Y.P.,

    Defendant-Appellant.

_____

        Submitted November 4, 2024 – Decided January 27, 2025

        Before Judges Sabatino and Berdote Byrne.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-3755-23.

        The Law Office of Louis G. Guzzo, attorney for appellant (Louis G. Guzzo, on the brief).

        Shilton Law and Law Office of Christine M. D'Elia, attorneys for respondent (A. Victoria Shilton and Christine M. D'Elia, on the brief).

---

[1] We use the parties' initials to protect the confidentiality of the alleged victim of domestic violence. R. 1:38-3(d)(10).

PER CURIAM

Defendant appeals from a final restraining order ("FRO") entered against him pursuant to the Prevention of Domestic Violence Act of 1991 ("PDVA"), N.J.S.A. 2C:25-17 to -35, based upon the predicate act of sexual assault, N.J.S.A. 2C:14-2. On appeal, defendant argues the trial court erred in entering the FRO against him because it failed to make findings of facts and conclusions of law, and failed to find an FRO was necessary to protect plaintiff from future acts of domestic violence. We agree and vacate the FRO, reinstate plaintiff's TRO dated June 9, 2023, and remand to a different judge for a new FRO hearing.

## I.

We glean the following facts from the record. The parties met at plaintiff's workplace, a store that sells firearms. Plaintiff contends they met in early May 2023. On May 9, 2023, the parties met for coffee. At the FRO hearing, plaintiff testified she went to defendant's house on May 10, 2023, where she performed "consensual oral sex" on him. Plaintiff claimed right after this, defendant "yelled at [her]" and "got real mad [sic], because [she] spit the cum[2] on his pillowcase." Plaintiff testified between May 10 and 19, 2023, she met with

---

[2] This factual specificity is necessary for the accuracy of the testimony and is not intended to offend the reader's sensibilities.

A-0425-23

defendant at a park, where defendant allegedly asked plaintiff multiple times to perform oral sex on him. Plaintiff testified she performed oral sex on defendant after feeling "stressed and pressured into doing it" because defendant repeatedly asked her, his tone changed from "normal" to "upset," and she feared he would become "mad and aggressive" or "hit [her]" because of his reaction after their first sexual encounter. Nevertheless, the parties continued communicating and meeting.

The parties planned to meet on May 19, 2023, to go for a walk. When plaintiff arrived, defendant asked her to come with him to his house. When they were in defendant's room, he allegedly told plaintiff they "were going to have sex." According to the plaintiff, she responded, "we[are] not having sex," but defendant proceeded to "pull[ ] [her] pants down." Plaintiff testified, although she asked him to stop and told defendant he was hurting her, he held her down on his bed by her wrists and sexually assaulted her. After the alleged assault, plaintiff and defendant continued to have text message conversations because plaintiff "felt like [she] had no choice." Plaintiff attempted to report the alleged assault and sought help but claimed she "could not get any help." Plaintiff testified at trial:

> I went to CAMcare to get help. I could not get any help.
> I filled out a detective form at the police station

numerous times. Nobody would help me. I went to [Services Empowering Rights of Victims ("SERV")]. Nobody would help me, no matter how many times I went to CAMcare. . . . I called the . . . rape crisis hotline. They would transfer me to SERV. SERV would tell me there's not [sic] anybody available to come to the police station.

Defendant and plaintiff saw each other for the first time since the alleged sexual assault when defendant came into plaintiff's workplace. Defendant told plaintiff he wanted to purchase a "long gun bag" and asked her questions about other long guns. During this interaction, plaintiff testified she "had to keep [her] composure at work, knowing that [defendant] assaulted [her]," and was "furious" defendant "had the nerve to just come into [her] job . . . like nothing happened." Plaintiff testified she continued to text defendant and act "cordial[ly]" to ensure her safety and the safety of her daughter. In addition, plaintiff stated she "was afraid for her life" because she knew "[defendant] had firearms."

On May 24, 2023, plaintiff asked defendant to stop contacting her, which she testified he complied with, and on June 9, 2023, plaintiff obtained a TRO against defendant. At the FRO hearing, Plaintiff testified she felt it was necessary to have an FRO because "[defendant] sexually assaulted [her] against [her] own will . . . . nobody would help [her]. . . . [she] need[s] to feel safe. . . .

A-0425-23

[a]nd . . . do[es not] feel safe . . . . [a]nd [she] know[s] he has firearms." Plaintiff asked the trial court to grant her an FRO against defendant to hold him "accountable for sexually assaulting" her and to protect her and her daughter's safety.

On cross-examination, plaintiff testified she met with defendant at the park on May 10, 2023, and went to defendant's house for the first time on May 12, 2023. Plaintiff also stated she performed oral sex on defendant for the first time at the park on May 10, 2023. These statements contradicted plaintiff's earlier testimony, where she stated she performed oral sex on defendant for the first time on May 10, 2023, at his house, and felt pressured at the park into performing oral sex a second time out of fear of defendant's upset reaction after their first intimate encounter.

Defendant's testimony differed. According to him, as he was walking in the park with plaintiff, she stopped him, "reached around behind her," and grabbed his genitals. Defendant claimed plaintiff initiated oral sex in the park, and she stopped and performed oral sex "four or five times" on defendant.

He testified plaintiff came over his house on May 12, 2023, while his family was home, "asked where [his] room was," and once in his room "pushed [defendant] on [his] bed" and "proceeded to give [him] oral until [he] finished."

Contrary to plaintiff's testimony, defendant testified after plaintiff wiped her face with his pillowcase, he "just mentioned, well I guess I got [sic] to do laundry again."

Defendant testified he asked plaintiff on May 19, 2023, if she wanted to come inside his house and she agreed. Plaintiff then initiated oral sex and defendant asked if plaintiff "wanted to do anything more." According to defendant, they had consensual sex. Defendant visited plaintiff's workplace on May 22, 2023, "because [he] told [plaintiff] . . . [he] would stop by." Defendant testified he never sexually assaulted or demanded sex from plaintiff. Defendant testified, consistent with plaintiff's testimony, that he stopped contacting plaintiff when she asked him to not contact her again.

An FRO hearing was held on August 28, 2023. In deciding whether to grant the FRO, the trial court found plaintiff to be "a more credible witness" addressing her demeanor, which was "nervous," but finding "the basis [of] that nervousness . . . can be found in the classic case of State v. Kelly which talks about the battered woman syndrome." The trial court then discussed Sacharow v. Sacharow, 177 N.J. 62 (2003), and explained although "[p]eople [who] suffer from battered woman syndrome do [not] readily report things immediately. . . . the plaintiff testified at great length how she attempted to report the incident."

6

The trial court found "plaintiff to be a more credible witness than the defendant," and added "[t]hat[ is] as simple as the analysis can be." It found the parties were in a dating relationship, and found plaintiff "was under the control of the defendant[] and couldn't get out of that control."

Addressing whether an FRO was necessary, the trial court found plaintiff and defendant "have interaction in a community in which the issue is possession of firearms. . . . [and] there is certainly a basis for . . . [p]rong [two] of Silver, that there[ is] a need for protection, because they interact."

This appeal followed.

## II.

Our review of an FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to the Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Consequently, findings by a court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12

7

(1998)). However, we do not accord such deference to the court's legal conclusions, which we review de novo. C.C., 463 N.J. Super. at 428. Questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)); see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003) (remanding to the trial court because it failed to "consider the totality of the circumstances surrounding the complaint"); D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of an FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and plaintiff's lack of fear).

On appeal, defendant raises two issues. He claims the trial court erred in failing to make adequate findings of fact and conclusions of law, and the trial court failed to determine whether an FRO was necessary to protect the plaintiff from future acts of domestic violence, in compliance with the statute and applicable case law. We agree.

When determining whether to issue an FRO pursuant to the PDVA, the Family Part is required to make two distinct determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the trial court "must

determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, if a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021).

The predicate acts enumerated in the PDVA include sexual assault. N.J.S.A. 2C:25-19(a)(7). If the plaintiff proves by a preponderance of the evidence a sexual assault occurred, then the first prong of Silver is met. See T.B., 479 N.J. Super. at 412 (quoting Silver, 387 N.J. Super. at 125); see, e.g., S.D. v. M.J.R., 415 N.J. Super. 417, 438-42 (App. Div. 2010) (reversing and remanding for the entry of an FRO based on multiple predicate acts of domestic violence, including sexual assault). Here, plaintiff alleges she was sexually assaulted by the defendant. Defendant contends he did not sexually assault plaintiff, and instead alleges all of their intimate interactions were consensual.

The trial court did not make specific findings of fact and conclusions of law regarding the predicate act of sexual assault, and instead only stated the plaintiff was more credible. Addressing the first prong of Silver, the trial court said:

[T]he requirements are found in two decisions as to whether a[n FRO] is to be granted. First of all, is the <u>Silver</u> case. And then there is the <u>J.D. v. M.D.F.</u>, 207 N.J. 458, which adopts the <u>Silver</u> analysis, which requires proof of a predicate act, proof of a need for protection of a[n FRO]. Did the defendant in any way force himself on the plaintiff? If he pushed or shoved or grabbed an arm and pulled down, they are all parts of a[n] offensive touching, parts of a[n] assault. And finally, they[ are] parts of a sexual assault, if the [c]ourt finds that to be credible.

However, the trial court did not address these questions with any factual specificity and instead stated, "[t]here is the assault, here, that would be a sexual assault. The predicate act has been proven by the preponderance or greater weight of the evidence" without further elaboration.

Additionally, the trial court did not explain why it found plaintiff "could not get out of [defendant's] control," and cited the battered women's syndrome. The battered woman's syndrome was not raised by plaintiff or defendant, nor was there any expert testimony offered at trial with respect to it. The New Jersey Supreme Court has held "that 'the battered[]woman's syndrome is an appropriate subject for expert testimony; that the experts' conclusions . . . are sufficiently reliable under New Jersey's standards for scientific testimony.'" <u>State v. Townsend</u>, 186 N.J. 473, 491 (2006) (quoting <u>Kelly</u>, 97 N.J. at 187). Here, the trial court erred in relying upon the battered woman's syndrome to make

10

credibility determinations and findings without any testimony regarding same, and without the introduction of expert testimony pursuant to the New Jersey Rules of Evidence. See N.J.R.E. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."). A finding that a victim is suffering from battered women's syndrome is not necessary in order for a restraining order to issue; domestic violence and battered women's syndrome are not synonymous. It is axiomatic that not every victim of domestic violence suffers from battered women's syndrome.

The trial court also erred in relying upon the battered woman's syndrome in reaching its conclusions because the "[s]yndrome is recognized as 'a collection of common behavioral and psychological characteristics exhibited in women who repeatedly are physically and emotionally abused over a prolonged length of time by the dominant male figure in their lives.'" State v. Hess, 207 N.J. 123, 149 (2011) (quoting State v. B.H., 183 N.J. 171, 182 (2005)). Here, plaintiff was in a relationship with defendant from May 9 through May 24 and the trial court failed to address how it found plaintiff was suffering from battered

women's syndrome for a "prolonged length of time." Nor did the trial court make specific findings of fact and conclusions of law on the reasons why the court reached the conclusion that "one or more factors of coercive control are more or less relevant than others." Plaintiff did not testify she was under defendant's control during their brief relationship.

In sum, the trial court failed to make sufficient findings of fact and conclusions of law to sustain commission of sexual assault, and erroneously relied upon the battered women's syndrome to explain its findings that plaintiff was more credible and under defendant's control. As such, we are constrained to remand the matter for a new FRO hearing.

Additionally, the trial court failed to make sufficient findings on the second prong of Silver as to whether an FRO was necessary. If a trial court finds a predicate act occurred, it must make the second determination of "whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R., 467 N.J. Super. at 322; see also Silver, 387 N.J. Super. at 127 ("[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."). The commission of one of the acts of domestic violence set forth in

N.J.S.A. 2C:25-19(a) does not "automatically . . . warrant the issuance of a domestic violence [restraining] order." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

N.J.S.A. 2C:25-29(a) provides "[t]he court shall consider but not be limited to" seven factors, including the previous history of domestic violence between the parties. N.J.S.A. 2C:25-29(a)(1). "[W]hether the victim fears the defendant" is an additional factor the trial court may consider. G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)). The court must determine, pursuant to the totality of the circumstances, whether the FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; see also N.J.S.A. 2C:25-29(b) ("[T]he court shall grant any relief necessary to prevent further abuse."); C.C., 463 N.J. Super. at 436. The inquiry is necessarily fact specific. Silver, 387 N.J. Super. at 127-28 (remanding for further fact-finding).

The trial court erred in failing to consider the totality of the circumstances and in issuing an FRO merely because defendant owns weapons. The trial court did not make specific findings of fact or conclusions of law in determining whether plaintiff was in danger of future risk of harm by defendant. In its

13

decision, the trial court held the second prong of Silver was satisfied merely because "there[ is] this need for protection[] because they interact.  They[ are] in the same community involving the use [of] . . . a firearm."

The trial court's conclusion that plaintiff "wants this protection" and she "feels entitled to" an FRO is not sufficient to prove the second prong of Silver and support an FRO against defendant.  A trial court "shall, by opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ."  R. 1:7-4(a). When a trial court does not "articulate precise findings of fact and conclusions of law" to explain its conclusions, the matter must be remanded for a re-hearing. See J.D., 207 N.J. at 486-88; Gnall v. Gnall, 222 N.J. 414, 428 (2015) ("Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))). The trial court's failure to make factual findings and legal conclusions does not afford us any meaningful opportunity to review its rulings, requiring our reversal and remand.

The FRO dated August 28, 2023, is vacated, the TRO dated June 9, 2023, is reinstated, effective immediately, and this matter is remanded for a new FRO

14                                                                      A-0425-23

hearing.  Because the trial court made credibility determinations, the matter is remanded for a new trial before a different judge.  See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023).  We take no position as to the outcome of that hearing.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0425-23